**UNITED STATES of America, Appellee,**

v.

**Laurie C. KILBOURNE, Appellant.**

**No. 76–1911.**

United States Court of Appeals, Fourth Circuit.

Argued July 14, 1977.

Decided Aug. 2, 1977.

Certiorari Denied Oct. 3, 1977.

See 98 S.Ct. 220.

10. Act of April 12, 1977, Pub.L.No. 95–19, § 401, 91 Stat. 39.

Gerald D. Glass, Asst. Federal Public Defender (Charles G. Bernstein, Federal Public Defender, Baltimore, Md., on brief), for appellant.

Daniel F. Goldstein, Asst. U. S. Atty. Baltimore, Md., (Jervis S. Finney, U. S. Atty. and Joseph M. Fairbanks, Asst. U. S. Atty., Baltimore, Md., on brief), for appellee.

Before WINTER and BUTZNER, Circuit Judges, and ALEXANDER HARVEY, II, District Judge, United States District Court for the District of Maryland, sitting by designation.

BUTZNER, Circuit Judge:

Laurie Claudius Kilbourne, convicted of first degree murder, assigns the following errors: (1) the evidence is insufficient to sustain the verdict; (2) the court erred by admitting (a) a statement he gave the police, (b) testimony about his sexual relations with the deceased, and (c) photographs of the deceased's body; and (3) the trial court should have excluded evidence of an admission by silence, or at least conducted a hearing on this question in the absence of the jury.

■ Kilbourne had been having an affair with the decedent, a teen-age girl who was much younger than he. Kilbourne's glove found at the secluded scene of the murder near the Baltimore-Washington Parkway, his conversations with a friend about the victim's death before her body was discovered, the nature of the victim's wounds, Kilbourne's attempt to establish an alibi, and his jealousy provided sufficient evidence to sustain the jury's verdict. *See United States v. Sherman*, 421 F.2d 198, 199 (4th Cir. 1970).

■ Soon after the deceased's body was found, police questioned Kilbourne without warning him in accordance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Kilbourne made an exculpatory statement which the district court admitted into evidence after conducting an evidentiary hearing on Kilbourne's motion to suppress. The basis of the court's ruling was its finding that Kilbourne was not in custody when the police questioned him. Its admission of the statement was proper. Kilbourne's interrogation was substantially similar to the one which the Supreme Court held to be non-custodial in *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

■ Over Kilbourne's objection, the district court admitted evidence of Kilbourne's sexual relations with the decedent. This evidence was relevant because it supported the prosecution's theory that Kilbourne was jealous. The importance of showing Kilbourne's motive for the crime was not substantially outweighed by the danger of prejudice. Therefore, the district court did not abuse its discretion by admitting the evidence. *See* Fed.R.Evid. 402, 403.

■ Similarly, the probative value of photographs of the decedent's body outweighed the danger of prejudice. Pictures taken at the scene showed the proximity of the body to certain items linked to Kilbourne, including a package of cigarettes and a gin bottle. Photographs taken at the morgue supported the prosecutor's theory that the nature of the victim's wounds indicated that the killer had acted deliberately and with premeditation. *See* Fed.R.Evid.

402, 403; *Harried v. United States,* 128 U.S.App.D.C. 330, 389 F.2d 281, 286–87 (1967).

An hour and a half before the victim's body was found, and long before the police released news of the murder, Kilbourne told a friend that she was dead. More than a month later the same friend and Kilbourne had a conversation about which the friend testified as follows:

Q. What did you say to him and what did he say to you?

A. I said, "Laurie, if you killed that girl, you know, you have got to be inhuman because you act natural, nothing bothers you, you are the same way, you know."

He said to me, "Norman, you know I didn't do it."

I paused for a while, I said, "How did you know the girl died? How did you know about the girl's death?"

He said that a friend of his called him and told him about it about 8:00 o'clock.

I said to him, "But you called me before 8:00 o'clock," and the conversation was turned off right there. I didn't get any answer. No response from him. I bid him farewell.

At the trial Kilbourne objected to this testimony of admission by silence on the ground that the fifth amendment required its exclusion. He now claims as an additional error that the court failed to conduct a hearing to ascertain whether a sufficient foundation was laid for the testimony.

■ The district court properly permitted the witness to testify about Kilbourne's silence when he was confronted with his early, unexplained knowledge of the victim's death. *See* Fed.R.Evid. 801(d)(2)(B); 4 Weinstein's Evidence ¶ 801(d)(2)(B)[01] (1976); *cf. United States v. Moore,* 484 F.2d 1284, 1285–86 (4th Cir. 1973). It correctly instructed the jury on this aspect of the trial.

■ Furthermore, we find no cause for reversal in Kilbourne's contention, first asserted on appeal, that the judge should have conducted a hearing on the admissibility of the evidence. Ordinarily, such a hearing should be held. However, during the trial, Kilbourne did not ask for the hearing, and he has never claimed that he did not hear or understand the question to which he offered no response. Indeed, he proffered no evidence to dispute the circumstances of the conversation as related by the witness.

The judgment is affirmed.