The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Michael Albert QUINTANA,
Defendant-Appellant.

No. 81SA209.

Supreme Court of Colorado,
En Banc.

June 13, 1983.
Rehearing Denied July 5, 1983.

**606** 

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Larry J. Rodriguez, Colorado Springs, for defendant-appellant.

QUINN, Justice.

The defendant, Michael Albert Quintana, appeals his conviction for second degree burglary, section 18–4–203, C.R.S.1973 (1978 Repl.Vol. 8 and 1982 Supp.). He asserts as error the trial court's denial of his motion for a judgment of acquittal at the end of all the evidence and the admission into evidence of his postarrest silence. Although we conclude that the evidence was sufficient to support the burglary conviction, we are satisfied that the evidence of the defendant's postarrest silence was so ambiguous as to lack probative value and should not have been admitted. We accordingly reverse the defendant's conviction and remand for a new trial.[1]

I.

The defendant was charged with the burglary of a Handy Dan store in El Paso County, Colorado, on March 23, 1980. The prosecution's evidence established that at approximately 8:00 p.m. on that day two Colorado Springs police officers responded to a silent burglar alarm which activated after the store had closed. The officers checked outside the store and then summoned a store employee to admit them into the interior. Upon entering, Officer Hogan located the defendant crouching behind a display rack. Officer Thompson located another person, Wayne Salazar, hiding behind a counter in an aisle some distance from the defendant. Both suspects were immediately handcuffed. Upon investigation the officers observed that an interior office of the

---

1. In addition to burglary the defendant was charged with three habitual criminal counts. The trial court dismissed two of these counts after the burglary trial was concluded. On this appeal the defendant also claims that the then existing statutory procedures governing the trial of substantive and habitual criminal counts violated due process of law by unduly burdening a defendant's constitutional right to testify in his own defense on the substantive count. *See generally People v. Chavez,* 621 P.2d 1362 (Colo.1981), *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981); section 16–13–103, C.R.S.1973 (1978 Repl.Vol. 8 and 1982 Supp.). Our resolution of this appeal on evidentiary grounds renders it unnecessary to address the defendant's challenge to the habitual criminal statutory procedures. It was this latter claim that constituted the basis for the transfer of this case from the court of appeals, *see* sections 13–4–102(1)(b) and 13–4–110(1)(a), C.R.S.1973.

store had been ransacked and ceiling panels punched out in order to permit access to other interior offices. The officers located a bag of coins on top of one of the office desks with various tools strewn about.

The defendant and Salazar were taken to the police station in separate police vehicles. At the stationhouse the defendant was asked his name and identified himself to Officer Hogan as Michael Quintana. He then asked the officer how he knew they "were inside the store." The record is silent on when, if at all, the defendant was given a *Miranda* advisement.[2] At the police station the officers conducted a search of the defendant and took four pieces of paper and a pen from him. On one piece of paper there was inscribed the following question: "Are you positive they close at six?"

Although the defendant elected not to testify in his own defense, he presented testimony from other witnesses placing in issue the affirmative defense of duress. Wayne Salazar described how he became angry with the defendant over an unpaid debt which the defendant owed him. When Salazar learned that the defendant had purchased a car instead of paying this debt, Salazar forced the defendant at gunpoint to drive to the Handy Dan store and assist him in the commission of a burglary.[3] Upon arriving at the store Salazar, unknown to the defendant, left his gun inside the car. Once inside Salazar pretended to have the gun and forced the defendant to use a crowbar and other tools to break into various desks and offices, and on one occasion to crawl through the ceiling with the crowbar in hand in order to gain access to an adjoining locked office. According to Salazar, it was the defendant who wrote the note recovered by the police at the police station.

At the conclusion of Salazar's direct testimony the district attorney requested the court to permit cross-examination about the defendant's failure to immediately make a statement with respect to his claim of duress, his failure to warn the officers that Salazar was armed, and the defendant's general conduct and demeanor at the time of his arrest. It was the district attorney's position that this evidence was "outside the scope of *Miranda*." Although the defendant objected to this line of inquiry, the court ruled that it would permit the cross-examination. The district attorney thereafter elicited from Salazar testimony that the defendant, immediately after being arrested, made no statement whatever to the officers about the alleged threats employed against him or Salazar's possession of a gun. The defense also called Robert Byrd, Salazar's older brother, to reinforce the affirmative defense of duress. Byrd testified that on the date of the burglary he observed Salazar force the defendant at gunpoint to accompany him. The prosecutor established on cross-examination that although Byrd was purportedly concerned when he saw this incident, he took no steps to alert the police of the possible danger to the defendant.

In rebuttal the prosecution called the two arresting officers. The district attorney elicited testimony from Officer Thompson that the defendant at the time of his arrest "could have made any statement that he wished" about Salazar forcing him to commit the burglary, but said nothing and showed no signs of relief at the arrival of the officers. The district attorney elicited similar testimony from Officer Hogan, who stated that the defendant volunteered no statement of gratitude upon being arrested, offered no warning about Salazar's possession of a weapon, and manifested no sign of relief.

Reference to the defendant's postarrest silence was also made in the district attorney's summation to the jury, which returned a guilty verdict to the crime of second degree burglary. After denying the

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** According to his testimony, prior to the defendant's trial Salazar entered a plea of guilty to a charge of second degree burglary, section 18–4–203, C.R.S.1973 (1978 Repl.Vol. 8 and 1982 Supp.).

defendant's motion for a new trial, the court imposed a sentence of four years.

## II.

The defendant first argues that the trial court erred in not granting his motion for a judgment of acquittal at the conclusion of all the evidence. While the defendant concedes that the prosecution's evidence was sufficient to prove that he acted in such a manner as to satisfy all the essential elements of burglary, he contends that the totality of evidence establishes the affirmative defense of duress as a matter of law. We disagree with this claim.

■■■ Section 18–1–708, C.R.S.1973 (1978 Repl.Vol. 8), which creates the affirmative defense of duress, states:

"A person may not be convicted of an offense, other than a class 1 felony, based upon conduct in which he engaged because of the use or threatened use of unlawful force upon him or upon another person, which force or threatened use thereof a reasonable person in his situation would have been unable to resist. This defense is not available when a person intentionally or recklessly places himself in a situation in which it is foreseeable that he will be subjected to such force or threatened use thereof."

When an accused presents some credible evidence on the issue of duress, the prosecution must establish beyond a reasonable doubt the defendant's guilt as to that issue as well as all other elements of the offense. Section 18–1–407(2), C.R.S.1973 (1978 Repl. Vol. 8); see Bailey v. People, 630 P.2d 1062 (Colo.1981). In resolving the defendant's claim we must view all the evidence in the light most favorable to the prosecution and draw all reasonable inferences therefrom and then determine whether the evidence, when so viewed, is substantial and sufficient to permit a reasonable person to conclude beyond a reasonable doubt that the defendant did not commit the burglary under duress. See, e.g., Bailey v. People, supra; People v. Traubert, 625 P.2d 991 (Colo. 1981); People v. Smith, 623 P.2d 404 (Colo. 1981). In making this determination it must be borne in mind that the credibility of the witnesses and the weight to be accorded the evidence are matters exclusively within the province of the jury. E.g., People v. Noga, 196 Colo. 478, 586 P.2d 1002 (1978).

■ The evidence, when appropriately viewed, is sufficient to withstand a motion for a judgment of acquittal. Independent of the evidence of the defendant's postarrest silence, much of Salazar's testimony was inconsistent with the claim that the defendant only participated in the burglary due to his fear of Salazar's threatened use of unlawful force against him. The evidence indicated that the defendant at one point was alone in a locked office armed with a crowbar, but nonetheless opened the locked door to allow Salazar's entrance. Also, when the officers first encountered the defendant, he was not within Salazar's immediate presence but rather some distance away from him inside the store. This evidence, along with Salazar's testimony that it was the defendant who wrote the note verifying the store's closing time, is consistent with a finding that the defendant and Salazar, by predesign, remained in the store after it closed and then systematically sought out the location of the money in the interior offices of the store. Furthermore, the defendant's subsequent question at the stationhouse—how the officers knew they "were inside the store"—can hardly be viewed as consistent with the normal reaction of a person who had recently been liberated from a serious threat. Finally, the prosecution was able to establish on cross-examination of Byrd, another defense witness, that he failed to alert anyone to the danger he perceived when he witnessed Salazar's abduction of the defendant at gunpoint. In short, the totality of evidence provided an adequate basis from which the jury could reasonably have concluded beyond a reasonable doubt that the defendant's participation in the burglary was voluntary and was not the product of duress at the hands of Salazar. The court therefore properly submitted the

charge of second degree burglary to the jury.

### III.

The defendant also claims that the trial court erred in admitting evidence of his postarrest silence to rebut his duress defense. We agree with his claim.

### A.

The United States Supreme Court in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), held that the impeachment use of an accused's postarrest silence, after *Miranda* warnings have been given, violates due process of law:

"The warnings mandated by [*Miranda*], as a prophylactic means of safeguarding Fifth Amendment rights, ... require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested.... Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.* at 617–18, 96 S.Ct. at 2244–45, 49 L.Ed.2d at 97–98.

Subsequent to *Doyle,* the Court in *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (per curiam), held that the admission into evidence of postarrest silence to impeach an accused's direct testimony is not constitutionally prohibited where *Miranda* warnings have not been given. Reasoning that the government has not induced silence by an assurance that silence will not be used against the accused in the event he chooses to take the stand at trial, the Court hastened to add: "A State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which post-arrest silence may be deemed to impeach a criminal defendant's own testimony." *Id.* at 607, 102 S.Ct. at 1312, 71 L.Ed.2d at 494.

The record in this case does not show whether the *Miranda* warnings were ever given to the defendant. However, we need not turn our decision on this aspect of the case. With the defendant having elected not to testify at trial, the only conceivable purpose for admitting the evidence of his postarrest silence was not to impeach his credibility but to substantively prove that he was not acting under duress at the time of the burglary. Although the admission of a nontestifying defendant's postarrest silence as substantive evidence of guilt raises substantial constitutional questions, *see* U.S. Const. Amend. XIV; *Colo. Const.* Art. II, Secs. 18 and 25, it is unnecessary for us to consider them at this time.[4] We rest our

---

**4.** The right to remain silent discussed in *Miranda v. Arizona, supra* note 2, applies to custodial interrogations because of the inherently coercive nature of police questioning. Because the Fifth Amendment privilege against self-incrimination does not grant an arrestee a general constitutional right of silence, an arrestee not receiving the *Miranda* warnings may have his silence used against him for impeachment purposes without running afoul of the Due Process Clause of the Fourteenth Amendment. *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982). Once the *Miranda* warnings are given, however, "the right to silence ... is one of constitutional dimension," *South Dakota v. Neville,* —— U.S. ——, ——, 103 S.Ct. 916, 923, 74 L.Ed.2d 748, 759 (1983), and, therefore, an arrestee receiving the warnings may not have his exercise of silence burdened by the admission of such silence against him for impeachment purposes. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The specific questions which we need not address here are, first, the extent to which the Due Process Clauses of the United States and Colorado Constitutions prohibit the substantive use of postarrest silence to establish guilt and, second, whether the Colorado constitutional privilege against self-incrimination should be

decision instead on the evidentiary principle of relevancy.

## B.

 Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." C.R.E. 401. Silence generally is thought "to lack probative value on the question of whether a person has expressed tacit agreement or disagreement with contemporaneous statements of others." *United States v. Hale*, 422 U.S. 171, 176, 95 S.Ct. 2133, 2136, 45 L.Ed.2d 99, 104. In some situations, however, where the normal reaction is to speak out in response to a statement, silence may have some probative value. In the face of an accusation of wrongdoing, for example, silence gains more probative weight "since it is assumed in such circumstances that the accused would be more likely than not to dispute an untrue accusation." *Id.; see* IIIA J. Wigmore, *Evidence* § 1042 (J. Chadbourn rev. 1970); C. McCormick, *Handbook of the Law of Evidence* § 270 (2 ed. E. Cleary 1972). Thus, some cases have recognized that a failure to deny an accusation, when the statement is heard and understood by an accused and could have been denied by him without emotional or physical impediment, is admissible as an adoptive admission. *See e.g., United States*

*v. Giese*, 597 F.2d 1170 (9th Cir.1979), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979); *United States v. Kilbourne*, 559 F.2d 1263 (4th Cir.1977), *cert. denied*, 434 U.S. 873, 98 S.Ct. 220, 54 L.Ed.2d 152 (1977); *United States v. Coppola*, 526 F.2d 764 (10th Cir.1975); *see also People v. Green*, 629 P.2d 1098 (Colo.App. 1981); C. McCormick, *supra*, at § 270. Also, the failure to assert a fact under circumstances in which it would have been natural to assert it has been construed to be the equivalent of a statement of the nonexistence of the fact.[5] *See, e.g., People v. McMath*, 104 Ill.App.2d 302, 244 N.E.2d 330 (1968), *aff'd*, 45 Ill.2d 33, 256 N.E.2d 835 (1970), *cert. denied*, 400 U.S. 846, 91 S.Ct. 92, 27 L.Ed.2d 83 (1970) (failure of defendant's chief alibi witness to speak previously in the defendant's behalf); *see also People v. Horne*, 619 P.2d 53 (Colo.1980) (failure to identify accused in photographic lineup admissible as relevant to weight to be attributed to in-court identification); IIIA J. Wigmore, *supra*, at § 1042.[6]

When a person is arrested, different considerations prevail than those existing in a noncustodial setting. These considerations directly affect the probative character of postarrest silence. An arrestee is under no obligation to speak to the police,[7] and his failure to speak to an arresting officer may stem from a number of sources. The arres-

construed to create a general right of postarrest silence, as distinguished from a right not to be compelled to speak, so as to prohibit the governmental use of postarrest silence for any purpose.

**5.** Similarly, in *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), the United States Supreme Court held that neither the privilege against compelled self-incrimination nor due process of law prohibited the admission into evidence of an accused's prearrest silence when such evidence was offered to impeach his trial testimony that he killed another in self-defense. The Court once again emphasized, however, that each jurisdiction was free to formulate its own rules of evidence on the admissibility of such evidence.

**6.** Under an analogous rule, evidence of the failure of a victim of an alleged sexual assault to make a timely complaint is admissible under appropriate circumstances. *See Padilla v. Peo-*

*ple*, 156 Colo. 186, 397 P.2d 741 (1964); *Coplin v. People*, 67 Colo. 17, 185 P. 254 (1919); II J. Wigmore, *Evidence* § 284 (J. Chadbourn rev. 1979).

**7.** The failure to make any statement should be distinguished from the situation where an accused does make a statement to law enforcement officials but the statement omits significant details which are later included in a subsequent statement. In the latter situation the accused has not elected to remain silent, but instead has waived that right and made a statement. The omission of a significant detail from such a statement is in the nature of a prior inconsistent statement. *See Anderson v. Charles*, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980); C. McCormick, *Handbook of the Law of Evidence* § 34 (2d ed. E. Cleary 1972).

tee, for example, may find the situation "so intimidating that [he] may choose to stand mute." *United States v. Hale, supra*, 422 U.S. at 177, 95 S.Ct. at 2137, 45 L.Ed.2d at 105. Silence might also be maintained "out of fear or unwillingness to incriminate another." *Id.* Or possibly the arrestee may "simply react with silence in response to the hostile and perhaps unfamiliar atmosphere surrounding his detention." *Id.* Under these circumstances the suspect might well choose to await a more propitious occasion for an explanation of his conduct. As the New York Court of Appeals observed in *People v. Conyers*, 52 N.Y.2d 454, 458–59, 438 N.Y.S.2d 741, 743, 420 N.E.2d 933, 935 (1981):

> "[T]he individual's silence in such circumstances may simply be attributable to his awareness that he is under no obligation to speak or to the natural caution that arises from his knowledge that anything he says might later be used against him at trial . . . . Alternatively, the individual may refrain from speaking because he believes that efforts to exonerate himself under the circumstances would be futile . . . . Finally, it is a lamentable but undeniable fact of modern society that some of our citizens harbor a mistrust for law enforcement authority which leads them to shun contact with the police even when the avoidance of contact is not in their own best interest . . . . Such individuals may refrain from speaking to law enforcement officials not because they are guilty of some crime, but rather because they are simply fearful of coming into contact with those whom they regard as antagonists. In short, although a defendant's failure to come forward with an

exculpatory version of events prior to trial may reflect negatively upon the veracity of his trial testimony, his prior silence also may be attributable to a variety of innocent circumstances that are completely unrelated to the truth or falsity of his testimony."[8]

In this case we do not determine whether postarrest silence in all circumstances is so lacking in probative value as to render it inadmissible for any purpose. Rather, the narrow issue presented here is whether the defendant's failure to make a statement to the police upon his arrest was properly admitted as substantive evidence of guilt even though he elected not to testify on his own behalf during trial. Evidence that is so remotely related to an issue as to afford only conjectural inferences should not be admitted. *People v. Botham*, 629 P.2d 589 (Colo.1981). Due to the many possible explanations for the defendant's postarrest silence, we hold that in the circumstances of this case evidence of his failure to make a statement to the arresting officers was so ambiguous and lacking in probative value as to be inadmissible as substantive evidence when offered to disprove the affirmative defense of duress. In short, the existence of duress was not rendered less probable with the evidence of the defendant's postarrest silence than without it. The trial court, therefore, erred in admitting this evidence before the jury.[9]

### C.

The admission of the defendant's postarrest silence under the circumstances of this case cannot be considered harmless error. Crim.P. 52(a) defines harmless error as an error "which does not

. The New York Court of Appeals initially held that evidence of an accused's postarrest silence was inadmissible for impeachment purposes, both on evidentiary and constitutional grounds. *People v. Conyers*, 49 N.Y.2d 174, 424 N.Y.S.2d 402, 400 N.E.2d 342 (1980). The prosecution petitioned the United States Supreme Court for a writ of certiorari, and while this petition was pending the Court decided *Jenkins v. Anderson, supra* note 5. Shortly thereafter the Court vacated the judgment in *Conyers* and remanded the case for reconsideration in light of *Jenkins*. On remand the New York Court of Appeals

adhered to its earlier result, but rested it solely on an evidentiary basis. *People v. Conyers*, 52 N.Y.2d 454, 438 N.Y.S.2d 741, 420 N.E.2d 933 (1981).

. We do not intend by this holding to exclude evidence of the defendant's conduct and general demeanor upon arrest, offered to rebut a claim of duress. The admissibility of such evidence must be decided by the trial court in the factual context of the case.

affect the substantial rights" of the defendant. As previously noted, there was sufficient evidence to submit the charge of second degree burglary to the jury even without the evidence of the defendant's postarrest silence. The proper inquiry, however, in determining a harmless error question is not whether there was sufficient evidence to support the verdict without the improperly admitted evidence. Rather, the appropriate question is whether the error substantially influenced the verdict or affected the fairness of the trial proceedings. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *accord People v. Lucero,* 200 Colo. 335, 615 P.2d 660 (1980); *People v. Incerto,* 180 Colo. 366, 505 P.2d 1309 (1973). "If so, or if one is left in grave doubt, the conviction cannot stand." *Kotteakos v. United States, supra,* 328 U.S. at 765, 66 S.Ct. at 1248, 90 L.Ed. at 1567. In this case it is obvious that the prosecution's effort to disprove duress centered primarily upon the defendant's failure to make any statement to the arresting officers about Salazar's threatening conduct. A fair reading of the record prevents one from saying with any degree of assurance that the outcome of the trial was not substantially influenced by the evidence of the defendant's postarrest silence.

The judgment is accordingly reversed and the cause is remanded to the district court for a new trial in accordance with the views herein expressed.

ROVIRA, J., dissents.

ROVIRA, Justice, dissenting:

I respectfully dissent.

Despite the fact that other explanations for the defendant's silence could be imagined, I cannot agree with the majority that the defendant's silence was "so ambiguous and lacking in probative value as to be inadmissible." The test of relevance is not whether the evidence by itself proves beyond a reasonable doubt the existence or nonexistence of a fact. Instead, as the majority acknowledges, it is whether the existence of the fact is made "more probable or less probable than it would be without the evidence." C.R.E. 401.

The question of relevance is one of common sense, which here involves a determination of whether a reasonable person could draw a reasonable inference from the defendant's silence at the time of his arrest. I believe that it is fair to say that the vast majority of people, upon being rescued by the police from being forced at gunpoint to commit a felony (and facing arrest for commission of the felony), would have made a statement to that effect. I believe, as perhaps did the jury, that a fair inference to be drawn from the defendant's silence is that the duress story was a later fabrication.[1]

The court holds that "many possible explanations" for a piece of evidence render it "ambiguous and therefore lacking in probative value." A relevance question is not an invitation to indulge in theoretical possibilities. For virtually any piece of circumstantial evidence, a multitude of explanations could be imagined. For example, the defendant's presence in the store could have been the result of his accidentally being locked in the store at closing time. Similarly, the note concerning the six-o'clock closing time could have been written at any time and could refer to any number of things. We do not, however, bar admission of these pieces of evidence, but the defendant is, of course, free to put forth his explanation of the evidence.

The majority states that it is not by its holding excluding evidence of the defendant's conduct and general demeanor upon arrest. Presumably, demeanor would include such things as whether he appeared frightened, nervous, confident, cocky, belligerent, relieved, or angry. I would have thought such testimony more, rather than less, ambiguous than the defendant's silence at the time of his arrest.

1. As the majority points out, Salazar, who was the defendant's chief witness to support his duress defense and who allegedly forced him to commit the burglary, had entered a plea of guilty to the burglary charge before he testified in the defendant's behalf. Salazar was therefore immune from further prosecution on that charge.

I also find confusing the majority's conclusion that admission of testimony about the defendant's silence, which it believes totally lacking in probative value, likely affected the jury's resolution of the case. If there were a showing that the testimony was unfairly prejudicial, it could be excluded under C.R.E. 403, even if relevant. Yet, in this case, the only prejudice flowing to the defendant is that a jury may have unanimously (and unreasonably, in the view of the majority) concluded that the defendant's post-arrest silence indicated that the duress defense was spurious.

In concluding that the admission of the defendant's post-arrest silence cannot be considered harmless error, the court states that a fair reading of the record "prevents one from saying with any degree of assurance that the outcome of the trial was not substantially influenced by the evidence of the defendant's postarrest silence." Assuming that the court is correct in holding that the admission of testimony concerning the defendant's silence was error, I nevertheless can, with a degree of assurance, conclude that the error was harmless.

Without restating the evidence, which is set out in the majority opinion, it is clear that the defense effort to establish duress was recognized for what it was by the jury and did not sway it from finding the defendant guilty based upon overwhelming evidence of guilt. I am satisfied from a reading of the whole record that the error relied on by the majority, if error, was harmless in that it did not substantially influence the verdict or affect the fairness of the trial.

I would affirm the conviction.