The PEOPLE of the State of
Colorado, Petitioner,

v.

Beverly CARLSON, Respondent.

No. 83SC392.

Supreme Court of Colorado,
En Banc.

Jan. 27, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for petitioner.

David F. Vela, State Public Defender, Thomas R. Williamson, Karen A. Chaney, Jody Sorenson Theis, Deputy State Public Defenders, Denver, for respondent.

QUINN, Chief Justice.

We granted certiorari to review the decision of the court of appeals in *People v. Carlson*, 677 P.2d 390 (Colo.App.1983), which reversed the conviction of the defendant, Beverly Carlson, for first degree arson. § 18-4-102, 8 C.R.S. (1978). The court of appeals held that the trial court committed reversible error in permitting a claims manager of an insurance company to testify that the company had denied the defendant's claim for fire loss to her business because the company believed it had a provable arson defense to the claim. We conclude that this evidence should have been excluded as irrelevant and that the error in admitting this improper evidence was not harmless. We accordingly affirm the judgment of the court of appeals.

I.

A summary of the prosecution's evidence will prove helpful to an understanding of the evidentiary issue raised in this appeal. The defendant was charged with first degree arson by knowingly setting fire to the building of Ione Jacobs at 1018 Eighteenth Street in Greeley, Colorado on February 13, 1980. The defendant leased store space in this building and operated a business consisting of the sale of genealogical books and supplies, other rare and used books, and Scottish imports. The defendant's inventory and other property utilized in the operation of her business were completely destroyed in the fire.

On February 13, 1980, at approximately 4:20 p.m. the defendant visited the Dial Finance Company, which was located next to her store, in order to obtain information about collecting on some of her accounts. Margo Scott, an employee in the Dial office, told her to go back to her store and bring back her records pertaining to the delinquent accounts. The defendant, according to Scott, hesitated about returning to her store, but eventually left to retrieve the documents. A few minutes later the defendant returned to the Dial office and stated that there was a fire in her store. She asked the manager of the Dial office to do something about the fire. The manager determined that the fire was too big for him to handle so he told Margo Scott to telephone the fire department. The Greeley fire department arrived at the defendant's store at approximately 4:40 p.m. and proceeded to extinguish the fire.

The cause of the fire was investigated by Lieutenant Don Alexander of the Greeley Fire Department. Alexander testified that he observed charred patterns on the tile beneath the store's carpeting and explained that these patterns were similar to those associated with fires ignited by a flammable liquid. Detective Roger Muller of the Greeley Police Department testified that he interviewed the defendant on February 18, 1980, at the Greeley police station. The defendant, who was accompanied by her

husband and who was not under arrest at the time, gave the detective the following account of the fire: after securing the back door of her store with a two-by-four, she left the store through the front door, locked it, and went to the Dial office where she remained for approximately twenty minutes; she then returned to her store to get some papers and smelled smoke upon entering the store; she walked back to the rear of the store where she discovered smoke coming from inside a closet and immediately returned to the Dial office where she alerted the people there about the fire.[1]

James Jordon, an arson investigator with the Colorado Bureau of Investigation, testified that, based on the evidence admitted at trial that pertained to the fire, it was his opinion that the fire did not originate inside the closet but was deliberately set in the hallway in front of the closet and that the fire was of an incendiary nature. The prosecution also called several witnesses who testified to various debts and other financial difficulties of the defendant prior to the fire.[2]

The prosecution's evidence directly bearing on the issue raised here centered on the defendant's insurance coverage in effect at the time of the fire. This evidence established that Commercial Union Insurance Company (Commercial Union) had issued a policy to the defendant insuring her for $40,000 against all direct physical loss to "business personal property," which was defined as including all inventory and other property owned by the defendant and usual to her business while the property was in or on the insured premises. The policy contained a loss payable clause for the benefit of the Small Business Administration, which held a $25,000 security interest in the defendant's equipment, furniture, inventory, and accounts receivable, and also contained the following exclusion:

> [Commercial Union] will not pay *you* for loss caused by any fraudulent, dishonest, or criminal act committed by, or at the instigation of:
>
> (a) *You,*
>
> (b) Any partner or joint venturer of *yours;*
>
> (c) Any of *your* employees,
>
> (d) If *you* are a corporation, any director, trustee, officer, or their authorized representatives, or
>
> (e) Any other person to whom the property is entrusted. Whether acting alone or in collusion with others.

(emphasis in original).

A claim adjuster for Commercial Union testified that the defendant submitted an insurance claim for $51,953.85, based on the value of her inventory and other equipment destroyed in the fire. The prosecution then called the claims manager for Commercial Union and elicited the following testimony:

> Q With respect to Mrs. Carlson's claim, did you make a decision as to whether or not her claim could be reimbursed and paid under her policy?
>
> A Yes, I did.
>
> Q And what was that decision?
>
> A We denied it[.]
>
> Q Why did you deny it?

---

1. In addition to the defendant's statement to Detective Muller, two other statements of the defendant were admitted into evidence as part of the prosecution's case. One was the defendant's transcribed interview with the attorney for Commercial Union Insurance Company in connection with the defendant's insurance claim; and the other was the defendant's testimony at a previous trial on the arson charge, which resulted in a guilty verdict and a post-trial order granting a new trial. These other statements contained basically the same sequence of events in relation to the defendant's discovery of the fire as the defendant described to Detective Muller.

2. The prosecution's evidence concerning the defendant's financial difficulties consisted of testimony from the manager of the building that the defendant was behind in her rent payments, testimony from several creditors that she still owed bills on merchandise delivered and money loaned to her, testimony from a bank officer that she had applied for a business loan but was denied the loan for lack of acceptable collateral, and testimony from an attorney for the insurance carrier about various debts owed by the defendant at the time of the fire.

At this point defense counsel objected, claiming that the reason for the company's denial of the defendant's claim was irrelevant. The trial court overruled the objection and permitted the question for the limited purpose of showing the reason for the insurance company's denial of the claim but not to establish that arson had occurred. The questioning of the claims manager then continued as follows:

Q Mr. Gardner, why did you reject the claim?

A Based on our evaluation of the evidence we had, and on the advice of our attorney we felt a proveable [sic] arson defense.

Immediately after admitting the claims manager's testimony, the trial court orally instructed the jury that this evidence was admitted for the limited purpose of establishing the reasons for "denying coverage on the insurance policy" and that it should not be considered by the jury "as proof of the fact that arson occurred, but only to show the corporate state of mind, if you will, in their refusing to guarantee coverage on the policy."

The jury returned a guilty verdict to the charge, and the court sentenced the defendant to eight years of probation and ordered restitution in the amount of $14,129.22. The court of appeals reversed the conviction and ordered a new trial, holding that the admission of the claims manager's testimony about the reason for the insurance company's denial of the defendant's claim was irrelevant and highly prejudicial to the defendant. We granted the People's petition to review the decision of the court of appeals.

## II.

The question before us is whether, as the court of appeals held, the trial court erred in admitting into evidence the claims manager's testimony that the insurance company denied the defendant's claim because the company believed it had a provable arson defense to the claim.[3] Article IV of the Colorado Rules of Evidence, which is entitled *Relevancy and Its Limits*, provides the framework for our resolution of this issue.

### A.

Relevant evidence is defined in CRE 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 402 expressly provides that "[e]vidence which is not relevant is not admissible." If, on the other hand, evidence is relevant, it may nonetheless be excluded under CRE 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless preparation of cumulative evidence."

In resolving an issue of relevancy, a court must first ask whether the proffered evidence relates to a fact "that is of consequence to the determination of the action," CRE 401—in other words, whether the proferred evidence is legally material to some factual issue in the case. If this question is answered in the negative, the evidence is simply inadmissible as having no bearing whatever on any issue in the case. If this initial question is answered in the affirmative, the next question centers on the matter of logical relevancy. The appropriate inquiry here is whether, as provided in CRE 401, the evidence makes the existence of a consequential fact "more probable or less probable than it would be

---

**3.** Although no testimony was elicited on the basis for the claims manager's belief that the insurance company had a provable arson defense to the defendant's insurance claim, the claims manager's testimony would appear on its face to be based on the opinions or statements of third parties. Because no opinion objection under CRE 701 or hearsay objection under CRE 802 was raised, we restrict our analysis to the question of relevancy.

without the evidence." If the proffered evidence is not logically relevant, the inquiry is at an end and the evidence should not be admitted. If, on the other hand, the evidence is logically relevant to a consequential fact, a third question must then be addressed—that is, whether under CRE 403 the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *People v. Lowe*, 660 P.2d 1261, 1265 (Colo.1983); 1 J. Weinstein and M. Berger, *Weinstein's Evidence* ¶ 403[01], at 403–13 (1982).

### B.

■ In determining whether the challenged evidence relates to a fact of consequence to the determination of this case, we must necessarily look to the elements of the crime charged. First degree arson consists of knowingly setting fire to or causing to be burned any building or occupied structure of another without the other's consent. § 18–4–102, 8 C.R.S. (1978). Thus, the prosecution's evidence showing that the defendant had a paid up fire insurance policy in effect at the time of the fire would certainly bear on the defendant's motive, which can well be a circumstance tending to establish the requisite *mens rea* for a criminal act. *E.g., People v. Elkhatib*, 632 P.2d 275 (Colo.1981); *People v. Corbett*, 199 Colo. 490, 611 P.2d 965 (1980); *People v. Calvaresi*, 198 Colo. 321, 600 P.2d 57 (1979). The claims manager's testimony, however, was not directed to, nor was it admitted as probative of, the *mens rea* element of the charge. On the contrary, the claims manager's testimony went directly to the corporate state of mind— that is, the insurance company's opinion or

belief about the cause of the fire as the basis for the company's denial of the defendant's claim—and the trial court admitted the evidence solely for that purpose.

■ This "state of mind" evidence tended to establish nothing more than the fact for which it was offered, namely, that the insurance company denied the defendant's claim because it believed the defendant committed arson. While there may be some circumstances in which an insurance company's state of mind could conceivably constitute a material issue in an arson prosecution, those circumstances are not present here. Under the state of the record before us, the insurance company's state of mind was of no consequence to the resolution of the arson charge.[4] It follows, therefore, that this evidence failed to satisfy the basic requirement of logical relevancy under CRE 401—that is, having some tendency to make more probable any fact that was of consequence to the case. Because the evidence in question was not logically relevant, we never reach the question of whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

### III.

■ The People claim that the admission of the claims manager's testimony, even if irrelevant, was harmless error. Crim.P. 52(a) defines harmless error as an error "which does not affect the substantial rights" of the defendant. "This rule merely recognizes the obvious fact that '[a] perfect trial is an impossibility and minor mistakes will inevitably occur.'" *Callis v.*

---

**4.** Even if the state of mind of the insurance company had been somehow placed in issue in this case, the testimony elicited from the claims manager was actually a statement of belief about a past event and, as such, constituted inadmissible hearsay. CRE 803(3), which creates a special hearsay exception for statements concerning the declarant's then existing state of mind, expressly excludes from the exception "a statement of memory or belief to prove the fact

remembered or believed unless it relates to the excecution, revocation, identification, or terms of declarant's will." To permit statements of memory to come in under the state of mind exception would result, for all practical purposes, in the abolition of the exclusionary rules pertaining to hearsay. *See generally Shepard v. United States*, 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196 (1933); *People v. Madson*, 638 P.2d 18 (Colo. 1981).

*People,* 692 P.2d 1045, 1053 (Colo.1984) (quoting *People v. Taylor,* 197 Colo. 161, 164, 591 P.2d 1017, 1019 (1979)). The appropriate inquiry in determining a harmless error question is not whether there was sufficient evidence to support the verdict without the improperly admitted evidence, but rather whether the error substantially influenced the verdict or affected the fairness of the trial proceedings. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *People v. Quintana,* 665 P.2d 605 (Colo.1983); *People v. Lucero,* 200 Colo. 335, 615 P.2d 660 (1980). If one is left in grave doubt about whether the error substantially influenced the verdict or affected the fairness of the trial proceedings, then the conviction cannot stand. *Kotteakos,* 328 U.S. at 765, 66 S.Ct. at 1248; *Quintana,* 665 P.2d at 612. If, on the other hand, irrelevant evidence is admitted in the face of overwhelming and properly admitted evidence of guilt, a reviewing court can well say that the evidentiary error did not contribute to the conviction and should therefore be deemed harmless. *E.g., Callis,* 692 P.2d 1045; *People v. McKnight,* 626 P.2d 678 (Colo.1981)..

■ The People's initial argument on harmless error is that the limiting instruction sufficiently blunted any prejudicial effect arising from the inadmissible evidence. We point out, however, that the instruction itself told the jury that the evidence was being admitted "to show the corporate state of mind" in refusing the defendant's claim. As we previously discussed, the corporate state of mind was totally immaterial to any issue in the case and was lacking in any probative tendency to prove any fact of consequence to the charge. At the very least, therefore, the plain terms of the jury instruction directed the jury's attention to an obviously improper consideration. More important, in view of the fact that the insurance policy excluded coverage for arson caused by or at the instigation of the insured, the limiting instruction clearly suggested to the jury that the insurance

company believed the defendant was the source of the arson and that the company could prove that fact. Far from blunting the effect of the inadmissible evidence on the jury, the limiting instruction exacerbated the risk that the improperly admitted evidence would substantially influence the jury in its deliberations.

The People also contend that the case against the defendant was so overwhelming as to render the admission of the improper evidence merely cumulative of other properly admitted evidence. We reject the People's interpretation of the record in regard to the strength of their case. Although the prosecution did elicit an opinion from an expert witness that the fire was arson-caused, there was no direct evidence that the defendant knowingly caused the fire. While the prosecution's case against the defendant can fairly be characterized as a strong circumstantial case of arson, we cannot say that a detached reading of the record leads us to conclude that the case against the defendant was overwhelming.

The judgment of the court of appeals is affirmed.