22CA1548 Peo v Wittman 04-17-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1548
Adams County District Court No. 20CR4287
Honorable Roberto Ramirez, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Sean Wittman,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE TOW
Dunn and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 17, 2025

Philip J. Weiser, Attorney General, John T. Lee, First Assistant Attorney
General, Cata A. Cueno, Assistant Attorney General, Denver, Colorado, for
Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Claire Pakis, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Sean Wittman, appeals the judgment of conviction entered on a jury verdict finding him guilty of felony menacing. We affirm.

## I.    Background

¶ 2    Wittman and another resident, Gerald LaFoe, had an altercation in the parking lot of an apartment complex. Approximately one month later, a maintenance worker at the apartment complex reported to the police that he had seen security footage of "a tenant in the complex who threatened another tenant with a gun." After police reviewed the footage and interviewed LaFoe and another resident in the apartment complex who witnessed the altercation, Richard Moreno, Wittman was arrested and charged with felony menacing. At trial, Wittman raised the affirmative defense of self-defense.

¶ 3    The following evidence was admitted at trial.

¶ 4    LaFoe testified that Wittman knocked on LaFoe's apartment door, claiming that LaFoe had hit Wittman's parked car in the parking lot at their apartment complex. LaFoe agreed to go outside to look at the parked cars, despite Wittman acting aggressively.

LaFoe testified that Wittman yelled at him to "[m]ove it, old man" on the way to the cars. LaFoe did not respond verbally.

¶ 5    Looking at the cars, LaFoe told Wittman that there was no damage to Wittman's car, but Wittman kept accusing LaFoe of hitting his car. LaFoe told Wittman he would go back to his apartment, get his car keys, and move his car so that Wittman could see that there was no damage to Wittman's car.

¶ 6    Once LaFoe had gotten his car keys and was walking back to the parked cars, he heard Wittman behind him rack a round into the chamber of a rifle. LaFoe turned around and saw Wittman holding an AR-15 style rifle. LaFoe testified that he asked Wittman, "So what? Are you going to shoot me now?" Wittman responded, "Yeah. I'm a veteran." When he saw the rifle, LaFoe felt terrified and feared he was going to be shot. LaFoe, who was unarmed, told Wittman, "I'm going to let you know something, dude. I'm no cream puff. All these scars got earned."[1]

---

[1] Lafoe initially denied making this statement. On cross-examination, after listening to the audio of his interview with the police, he acknowledged saying it but said he had no recollection of having done so.

¶ 7    Moreno testified that Wittman was irritated, yelling, and cussing at LaFoe; LaFoe cooperated with Wittman and was calm and listening to Wittman and was "taking in all the verbal abuse," and at no point did LaFoe not comply or argue with Wittman. Moreno also said that there was no indication that LaFoe had threatened Wittman prior to Wittman getting his rifle. When Moreno saw Wittman with the rifle, he said that LaFoe appeared to be unarmed, and that Wittman walked with the rifle facing LaFoe but not aiming it at him. While Wittman held the rifle, Moreno heard him tell LaFoe, "I don't fuck around."

¶ 8    Wittman testified that he felt threatened when LaFoe told him something to the effect of "all these scars got earned." Wittman said that he also felt threatened when LaFoe walked back to his apartment because LaFoe turned around and said, "You know what, I got something for you," and proceeded to point his fingers in the shape of a gun at Wittman. LaFoe denied doing this, and Moreno did not see this happen. Wittman admitted that his "level of fear" was not so high that he felt he needed to have a round in the chamber of the rifle.

¶ 9 The jury also watched two surveillance videos from the parking lot showing the incident. Although the videos had no sound and did not have high video quality, neither video showed LaFoe making a gesture in the shape of a gun. Wittman claimed that was because LaFoe made the gesture outside the frame of the surveillance video.

¶ 10 Because Wittman's car bumper was only scratched, Wittman and LaFoe agreed to part ways without calling the police or their insurance companies.

¶ 11 The jury rejected the affirmative defense of self-defense and convicted Wittman of felony menacing. The trial court sentenced Wittman to one year of supervised probation with additional conditions.

## II. Analysis

¶ 12 Wittman contends that his Fifth Amendment right was violated when the prosecutor was allowed to present evidence of statements that he did not make after he was arrested. Wittman also argues that the trial court abused its discretion by admitting evidence of his silence post-arrest and that this evidence should have been excluded under CRE 401 and 403. We conclude that

4

Wittman waived his constitutional argument. We further conclude that although the trial court erred by allowing the arresting officer, Detective Michael Lapham, to testify about Wittman's post-arrest silence, it was harmless error.

## A.   Additional Facts

¶ 13   During trial, Detective Lapham testified about Wittman's arrest and statements made during the ride to the police station. On direct examination, the prosecutor asked, "During that transport, did the defendant give any statement about a gun being involved?" Detective Lapham answered, "Yes, he did" and the prosecutor then asked, "What statement was that?" Detective Lapham answered, "At one point, Mr. Wittman asked me if it mattered [if] the gun was real or not."

¶ 14   Then the following exchange occurred between the prosecutor and Detective Lapham:

> Q. Now, were there other statements that the defendant made in the vehicle?
>
> A. Yes.
>
> Q. During transport?
>
> A. Yes.

Q. Were the other statements related to this case or the facts of this case?

A. No.

Q. Now, did at any point the defendant tell you that he was threatened?

A. No. Not that I remember.

Defense counsel objected, saying, "At this point, he's already said what statement had been said." When pressed for the legal basis of the objection, defense counsel said, "Relevance."

¶ 15 The prosecutor then asked Detective Lapham:

Q. Did at any point the defendant say that the victim said, "I'm not a cream puff"?

A. I don't remember hearing that at all.

Q. Did at any point the defendant say the victim told me the victim had scars and the victim had earned them?

A. No.

Q. During transport, did the defendant make any statement that the victim portrayed his hand in the shape of a gun or in a threatening manner?

A. No. I don't remember that at all.

¶ 16 On redirect, the prosecutor asked Detective Lapham whether Wittman expressed any confusion over the reason for arrest.

Defense counsel objected that it was outside the scope of cross-examination and then asked to make an additional objection outside the presence of the jury. Once the jury was excused, defense counsel supplemented her objection to the prosecutor's line of questioning during direct and redirect:

> So, Your Honor, the objection is that I think this is [an] improper line of questioning. Mr. Wittman invoked his rights under Miranda and chose not to make statements because that is his right under the constitution as well. And I guess I allowed a little bit of leeway originally. But now I'm getting really concerned about it because the jury shouldn't be able to hear about any of his silence that he was invoking or anything like that. And all these questions that [the prosecutor] asked on direct examination and now are really invoking that silence. And so I should have objected before. I'm objecting at this point. I think this is an improper line of questioning, and there's no way that we can respond to this either.

¶ 17    Because it was not clear from the prosecutor's line of questioning whether Wittman had invoked his right to remain silent, the trial court asked Detective Lapham whether Wittman had done so. Detective Lapham responded:

> So initially when I was transporting [Wittman], we were talking about, you know, some of his past and life and [the] fact that it was Christmas the day before. At one point, he

said the part about does it matter if the gun was not real? I said to him, "if you want to talk about this at all, we have to do it under Miranda and we need to Mirandize you. You don't need to go any further. You can be silent if you would like." And then there was a long pause and silence which I interpreted as him invoking his rights.

¶ 18 Defense counsel noted that they did not have any of that in discovery and argued that the prosecutor violated Crim. P. 16. Defense counsel then said these issues were "coupled with the fact that now [the prosecutor] has been asking questions both on direct and cross-examination regarding Mr. Wittman's silence." The court interrupted and stated, "Which you've made a record that you allowed." Defense counsel responded, "Correct. And this is not a contemporaneous objection. I understand that. But I am objecting. I know it's not the same. I recognize that issue. But at this time, I am objecting to those as well as to his new line of questioning, which is about the same." The court sustained the objection based on the invocation of silence.

¶ 19 The court found no Rule 16 violation and rejected defense counsel's request to provide a jury instruction.[2] Defense counsel

---

[2] Wittman does not appeal this ruling.

then reiterated that Detective Lapham's testimony about Wittman's silence violated Wittman's constitutional rights and asked that they be allowed to cross-examine Detective Lapham to cure the potential harm. After some discussion, defense counsel stated that this could be done by asking one question. The People agreed and the jury was brought back in. Defense counsel asked, "[Detective] Lapham, you never asked Mr. Wittman anything about the substance of the incident; correct?" Detective Lapham answered, "I did not."

## B. Waiver of Constitutional Argument

¶ 20    As an initial matter, the People contend that Wittman waived any constitutional argument. We agree.

¶ 21    We review de novo whether a claim is waived. *Richardson v. People*, 2020 CO 46, ¶ 21.

¶ 22    "Waiver . . . is 'the intentional relinquishment of a known right or privilege.'" *People v. Rediger*, 2018 CO 32, ¶ 39 (quoting *Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984)). A waiver may be explicit, as when a defendant "expressly abandons an existing right or privilege," or it may be implied, as when a defendant "engages in conduct that manifests an intent to relinquish a right or

9

privilege or acts inconsistently with its assertion." *Forgette v. People*, 2023 CO 4, ¶ 28. As "captain of the ship," defense counsel may waive a defendant's nonfundamental or statutory rights. *Phillips v. People*, 2019 CO 72, ¶ 16 (quoting *People v. Curtis*, 681 P.2d 504, 511 (Colo. 1984)).

¶ 23    When defense counsel objected on the grounds that the testimony was an improper comment on Wittman's right to remain silent, he said, "I would ask that we be allowed to cross-examine regarding that he was never asked about those two things and that it not be stated in reply to those question that his right to remain silent was revoked." Counsel continued, "I think that is the only way to cure the potential harm." The court permitted the inquiry and, to avoid the officer further commenting on Wittman's silence or his invocation of his rights, instructed the officer to answer simply "yes" or "no." Thus, because counsel was granted the very cure he requested, he waived any constitutional claim. *See People v. Manzanares*, 2020 COA 140M, ¶ 16 (concluding that the defendant waived claim where counsel objected to the error, "agreed to the trial court's curative procedure[,] and requested nothing further"); *cf. People v. Douglas*, 2012 COA 57, ¶ 65 (defendant waived claim of

prosecutorial misconduct where he objected to the comments, the trial court sustained the objection, and he requested no further relief).

¶ 24    We, therefore, do not address Wittman's constitutional challenge.  *See Rediger*, ¶ 40 ("[W]aiver extinguishes error, and therefore appellate review . . . .").

### C.    CRE 401

¶ 25    Counsel did not suggest, however, that this follow-up inquiry would resolve his relevance objection to the testimony.  We therefore turn to whether the court committed reversible evidentiary error.

### 1.    Standard of Review and Reversal

¶ 26    We review evidentiary rulings for an abuse of discretion. *People v. Shifrin*, 2014 COA 14, ¶ 52.  "A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or based on a misapplication of the law." *People v. Maloy*, 2020 COA 71, ¶ 54.

¶ 27    "[W]e review nonconstitutional trial errors that were preserved by objection for harmless error." *Hagos v. People*, 2012 CO 63, ¶ 12.  "[W]e reverse if the error 'substantially influenced the verdict

11

or affected the fairness of the trial proceedings.'" *Id.* (quoting *Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986)). But an error is harmless if "there is no reasonable probability that it contributed to the defendant's conviction." *Washington v. People*, 2024 CO 26, ¶ 25 (quoting *Crider v. People*, 186 P.3d 39, 42 (Colo. 2008)).

## 2. Applicable Law

¶ 28 Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401.

¶ 29 In *People v. Quintana,* the Colorado Supreme Court considered whether a defendant's post-arrest silence was relevant to disprove the affirmative defense of duress under the theory that the defendant's failure to tell the police that he had acted under duress made it less likely that his claim of duress was true. 665 P.2d 605, 607, 610 (Colo. 1983). The supreme court held that "[d]ue to the many possible explanations for the defendant's post[-]arrest silence, . . . evidence of his failure to make a statement to the arresting officers was so ambiguous and lacking in probative value as to be inadmissible as substantive evidence" of guilt. *Id.* at 611.

### 3. Application

¶ 30 As a threshold matter, the People appear to contend that defense counsel only objected to the question immediately preceding the objection — "Now, did at any point the defendant tell you that he was threatened?" — whereas Wittman contends that the trial court erroneously allowed that question as well as the three that followed it after the court overruled the objection. We agree with Wittman.

¶ 31 The basis of defense counsel's objection was that the substance of what Wittman had said was already in evidence, so questions about what he *did not* say were irrelevant. After the court overruled that objection, the prosecutor went on to ask three tailored questions about things Wittman did not say. In other words, all three subsequent questions sought the same type of information to which counsel had clearly stated an objection. We see no reason why counsel would have had to repeat an objection already rejected by the trial court. *See* CRE 103(a)(2) ("Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection . . . to preserve a claim of error for appeal.").

Consequently, we conclude that Wittman preserved his objection to all four questions.

¶ 32    The evidence that Wittman did not tell Detective Lapham about any threats or statements that LaFoe made to him during the altercation does not have any tendency to make it more probable that he was not acting in self-defense than it would have been without such evidence, and consequently such evidence was irrelevant and inadmissible. *See Quintana*, 665 P.2d at 611. As a result, the court erred by permitting this line of questioning.

¶ 33    However, the error was harmless.[3]

¶ 34    The prosecutor and Detective Lapham briefly referenced Wittman's post-arrest silence while discussing what happened when Wittman was arrested. Neither the prosecutor nor Detective

---

[3] Because we reach this conclusion, we do not need to address Wittman's argument that the evidence was also inadmissible under CRE 403. Even if we were to assume, without deciding, that it was error to admit the evidence under CRE 403, any prejudice flowing from this unpreserved error could not meet the threshold required to demonstrate plain error. *See People v. Ujaama*, 2012 COA 36, ¶¶ 36-38; *Am. Fam. Mut. Ins. Co. v. DeWitt*, 216 P.3d 60, 66-67 (Colo. App. 2008) (relevance objection does not preserve a CRE 403 objection), *aff'd*, 218 P.3d 318 (Colo. 2009); *see also People v. Alfaro*, 2014 CO 19, ¶ 8 ("[E]rror cannot rise to the level of plain error if it is harmless.").

Lapham said that Wittman's silence reflected guilt. In addition, during closing argument, the prosecutor did not reference Detective Lapham's challenged testimony. Thus, the improper references were brief, were not the focus of the prosecutor's comments or Detective Lapham's testimony, and were not repeated in closing arguments. *Cf. People v. Cuellar*, 2023 COA 20, ¶¶ 50-54 (concluding that brief reference to the defendant's invocation of his right to remain silent was harmless under the constitutional harmless error standard of reversal).

¶ 35    Moreover, the evidence against Wittman was overwhelming. The only contested issue at trial was whether Wittman acted in self-defense. And the jury watched the surveillance videos and heard Moreno's testimony about the interaction between Wittman and LaFoe. Contrary to Wittman's argument (and the prosecutor's statement in closing), the case did not rest solely on Wittman's and LaFoe's credibility. *Cf. id.*

¶ 36    In sum, we are persuaded that there is no reasonable probability that the error affected the verdict.

### III.    Disposition

¶ 37    The judgment is affirmed.

JUDGE DUNN and JUDGE MEIRINK concur.