The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Robert SANDOVAL, Defendant-Appellant.

No. 83CA0970.

Colorado Court of Appeals, Div. II.

July 11, 1985.

Rehearing Denied People Aug. 1, 1985.

Rehearing Denied Sandoval Aug. 29, 1985.

Certiorari Granted People Oct. 21, 1985.

Certiorari Denied Sandoval Dec. 16, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colo. State Public Defender, Peggy O'Leary, Deputy State Public Defender Denver, for defendant-appellant.

KELLY, Judge.

Defendant, Robert Sandoval, appeals his conviction of manslaughter, arguing that the trial court erred in denying his challenge for cause to a prospective juror, in allowing the prosecutor, during cross-examination and closing argument, to comment on the defendant's exercise of his right to remain silent, in denying his tendered instructions, and in allowing the prosecutor to comment in rebuttal closing that the defense was engaged in "character assassination" of prosecution witnesses. We reverse.

The charges in this case arose out of several events that occurred on Thanksgiving Day in 1982. The defendant attended a Thanksgiving dinner party at the apartment of his friends, Hudgens, Botello, and McClean, where they spent the day drinking alcohol and firing Hudgens' rifle at various targets. In the early evening, the defendant and his three friends went to a bar across the street. At the bar the defendant got into an argument with Hudgens, and shortly thereafter, the three friends left the bar and returned to the apartment.

As the defendant was walking from the bar to his van, three shots were fired from across the street, striking the side of the van. Defendant then drove his van to the apartment and accused his friends of shooting his van. Shortly afterwards, the defendant stabbed Botello.

## I.

Defendant first argues that the trial court erred in denying his challenge for cause to a prospective juror. We agree.

A defendant in a criminal case is entitled to a fair trial by an impartial jury. *People v. Gurule,* 628 P.2d 99 (Colo.1981). Section 16–10–103(1)(j), C.R.S. (1978 Repl.Vol. 8) provides that a juror shall be excused for cause if there is the "existence of a state of mind in the juror evincing enmity or bias toward the defendant...." If there is sufficient reason to question the impartiality of a juror, the trial court should grant a challenge for cause and dismiss the juror in

order to protect the interests of justice and promote judicial efficiency. *Nailor v. People,* 200 Colo. 30, 612 P.2d 79 (1980); *People v. Sandoval,* 706 P.2d 802 (Colo.App. 1985).

■ Trial courts are granted broad discretion in determining whether to grant a challenge for cause. *People v. McCrary,* 190 Colo. 538, 549 P.2d 1320 (1976). Yet, such discretion is not without limits and appellate courts must not "abdicate their responsibility to ensure [that] the requirements of fairness are fulfilled." *Morgan v. People,* 624 P.2d 1331 (Colo.1981).

■ During an extensive *voir dire* in this case, a prospective juror repeatedly stated that he would be predisposed to believe the testimony of police witnesses. During *voir dire,* the juror stated, "I do have a very high regard for policemen ... I am impressed with their work." The juror then indicated that if there were going to be "a whole lot of policemen saying the same thing, and with all due respect to Mr. Sandoval, it's going to take something mighty convincing on his part to convince me otherwise. I am going to put a lot of weight on the police testimony."

After further questioning, the juror again reiterated his position when he stated, "If I were given two people and one is a cop and one is somebody who is not a cop and ... one says it's red, one says it's blue, I would more than likely go with the cop." Despite the extensive *voir dire,* the juror remained fast in his conviction and again stated, "If I got a choice between two opinions and one is a policemen and one is otherwise, I am going with the authority." The juror also stated that he would have difficulty believing that a police officer would intentionally lie about a case.

In addition, the juror indicated that he would place some responsibility on the defense to prove its case. He stated that after the prosecution put on its case, he would expect the defense "to prove it the other way" or to show that it was "contrary" to what the prosecution had presented.

Under these circumstances, the trial court abused its discretion by denying the challenge for cause as the juror's attitude reflected an inability properly to assess the credibility of the witnesses as well as a predisposition to shift the burden of proof to the defendant. And, since defendant was forced to exhaust his peremptory challenges in order to excuse the challenged juror, and his request for an additional peremptory challenge was denied, the trial court's error was prejudicial to defendant.

## II.

The defendant next argues that the trial court erred in allowing the prosecutor, during cross-examination and closing argument, to comment on his failure to say that he acted in self-defense in a previous statement to the arresting officer. Defendant asserts that this was a violation of his right to remain silent. We disagree.

The United States Supreme Court, in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 48 L.Ed.2d 91 (1976), held that the impeachment use of an accused's post-arrest silence, after *Miranda* warnings have been given, violates due process of law. Subsequent to *Doyle*, the court, in *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), held that the admission of an accused's pre-arrest silence was not constitutionally prohibited when such evidence was offered to impeach the defendant's testimony that he killed another in self-defense.

The court in *Jenkins* reasoned that an inquiry into prior silence is proper when a defendant testifies because, by testifying, the defendant is offering himself as a witness and is waiving his right to remain silent. When a defendant takes the witness stand on his own behalf, he does so as any other witness and may be cross-examined within the limits of the appropriate rules. *Jenkins v. Anderson, supra.*

Attempted impeachment on cross-examination of the defendant enhances the reliability of the criminal process by allowing prosecutors to test the credibility of a witness by asking the witness to explain prior inconsistent statements and acts. *Jenkins v. Anderson, supra.* A defendant may choose not to take the witness stand because of the risk of cross-examination, but this is a choice of litigation tactics. Once the defendant does testify, the regard for the function of courts of justice to ascertain the truth prevails in a balance of considerations determining the scope and limits of the privilege against self-incrimination. *Jenkins v. Anderson, supra.*

In *Anderson v. Charles*, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), the court held that when a defendant makes a statement after *Miranda* warnings have been given, and testifies at trial to a different version of events, the prosecution may cross-examine the defendant on the omissions in his first statement insofar as such omissions are inconsistent with the defendant's testimony at trial. The court concluded that although "two inconsistent descriptions of events may be said to involve 'silence' insofar as it omits facts included in the other version ... *Doyle* does not require any such formalistic understanding of 'silence.'" The court determined that the prosecutor's questions were not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement. *Anderson v. Charles, supra.*

The Colorado Supreme Court has also noted this distinction in a footnote in *People v. Quintana*, 665 P.2d 605 (Colo.1983):

"The failure to make any statement should be distinguished from the situation where an accused does make a statement to law enforcement officials but the statement omits significant details which are later included in a subsequent statement. In the latter situation the accused has not elected to remain silent, but instead has waived that right and made a statement. The omission of a significant detail from such a statement is in the nature of a prior inconsistent statement."

*But see People v. Ortega*, 198 Colo. 179, 597 P.2d 1034 (1979).

At the suppression hearing, the arresting officer testified that after the defendant stated, "I stabbed him," the officer formally advised the defendant of his *Miranda* rights. Shortly thereafter, the defendant was handcuffed and placed in a patrol car at which time the officer again cautioned him that he did not have to talk or answer questions and that he had a right to an attorney and could stop talking at any time. Defendant agreed to talk and told the officer that he had been at the bar and was returning to his van when someone took shots at the van or at him.

The defendant then admitted driving his van a short distance and taking a chain saw from the van and entering the apartment from where the shots came with the intention to "cut" the sniper with the chain saw. The defendant told the officer that when the chain saw would not start, he threw it outside, went into the apartment kitchen, found a knife, and stabbed the victim. After defendant was taken to police headquarters, he was advised of his *Miranda* rights for the third time, and at that point, requested a lawyer and declined to make any further statements.

At the suppression hearing, the defendant testified that he stated to the arresting officer that he stabbed the victim out of fear for his own safety. At trial, the defendant testified that he approached the apartment only to seek restitution for damage to his van and that he brought his chain saw only to cut up the furniture if he were not compensated. He testified that before he entered the apartment, he was persuaded to "come in and talk it over," so he dropped the chain saw outside. Defendant also testified that he felt threatened and that he believed the victim and two others were going to hurt him. He testified that the victim was blocking the doorway and that he asked the victim to step aside, but very suddenly was forced to react with a knife.

At trial, the prosecutor cross-examined defendant about both his statements to the arresting officer and his testimony at the suppression hearing. On redirect examination, defendant attempted to suggest that if he had not made a complete statement to the arresting officer, it was because he had stopped talking after being readvised of his rights in the patrol car. On re-cross-examination, defendant admitted that he had made a statement to the arresting officer of his version of the events.

During closing argument, the prosecution commented on the defendant's failure to tell the police anything about self-defense at the time of his arrest when it not only would have been freshest in his mind but would also have offered an explanation for his behavior.

After the suppression hearing and at trial, the court ruled that the defendant had waived his right to silence by talking with the arresting officer and could be cross-examined regarding that conversation. However, the court also ruled that the prosecution could not ask any questions which would compromise defendant's subsequent exercise of his right to silence at police headquarters.

Here, defendant admittedly waived his right to remain silent and gave a statement to the police sometime between his arrest and his arrival at police headquarters. Defendant also testified at the suppression hearing and suggested that his post-arrest statement asserted self-defense. At trial, the defendant then tried to suggest that he had not made a complete statement to the arresting officer because he had been exercising his right to remain silent. This purported exercise of the right to remain silent in the patrol car was contrary not only to the arresting officer's testimony, but also to the defendant's own testimony at the suppression hearing. By such testimony, the defendant subjected himself to cross-examination regarding both inconsistencies and omissions. Since the cross-examination was proper, the prosecutor could properly comment upon the inconsistencies and omissions in defendant's statements in closing argument. *Johnson v. People,* 172 Colo. 406, 473 P.2d 974 (1970).

### III.

Defendant next argues that the trial court erred in refusing his tendered in-

structions on theory of defense, witness credibility, and criminal culpability. We disagree.

 While it is true that a defendant generally is entitled to an instruction on his theory of defense, the trial court here properly refused defendant's tendered instruction on the basis that it merely restated points covered by other instructions and contained argumentative matter. *See People v. Martinez,* 652 P.2d 174 (Colo.App. 1981). The court also properly refused defendant's other tendered instructions covering the same subject matter already covered by other instructions. *People v. Lee,* 199 Colo. 301, 607 P.2d 998 (1980).

## IV.

 Finally, defendant argues that the trial court erred in allowing the prosecutor to comment in rebuttal closing that the defense was engaged in "character assassination" of the prosecution witnesses. This comment does not constitute reversible error, but it should not be repeated on retrial. *See People v. Maes,* 43 Colo.App. 365, 609 P.2d 1105 (1980).

The judgment of conviction is reversed and the cause is remanded for a new trial.

TURSI and METZGER, JJ., concur.