The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Charlotte HARDIWAY, Defendant–
Appellant.

No. 91CA1841.

Colorado Court of Appeals,
Div. V.

Nov. 18, 1993.

Rehearing Denied Dec. 23, 1993.

Petition and Cross–Petition for
Certiorari Denied June 6, 1994.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Matthew S. Holman, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Frances S. Brown, Chief Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Chief Judge STERNBERG.

Defendant, Charlotte Hardiway, appeals from a judgment of conviction entered upon a jury verdict finding her guilty of second degree forgery. We reverse and remand for a new trial.

The events leading to the prosecution of defendant began when a store clerk took an invoice for a furniture order, a check, and a driver's license from a woman who was identified in those documents as "Marisa McCoy." The clerk processed the check through a verification service, which reported that the check had been stolen.

The clerk contacted her office manager who called the police. The manager then obtained a description of the woman from the clerk and personally observed the woman at the front counter. The clerk continued to process the transaction as though nothing were wrong, but the woman left the store before the police arrived.

Later that same day, the office manager noticed a woman walking toward the customer service area who appeared to be the same woman she had seen at the counter earlier. This woman presented an invoice under the name of "Marisa McCoy," so the manager again called the police. When the police arrived, the manager pointed out the defendant, and the officer arrested her for investigation of fraud by check.

The office manager called the clerk to customer service to identify the defendant, and the clerk confirmed that the handcuffed defendant was the same woman who had tendered the check. The testimony is conflicting as to whether the clerk volunteered the identification, or whether the office manager or police officer asked for the identification. At trial, neither the office manager nor the clerk could identify the defendant as the same woman they saw at the counter.

Both the state and defense experts testified that none of the writing on the check was made by the defendant. The only contested fact at trial was whether the defendant was the same woman who had tendered the stolen check.

## I.

Defendant asserts the trial court erred in admitting, over objection, testimony which implicated her exercise of her right to remain silent and in allowing comment on this testimony during rebuttal closing argument. We agree.

After the defendant was arrested, she was advised of her *Miranda* rights. She spoke with the officer briefly, but then invoked her right to remain silent.

At the trial, defendant testified to a more detailed version of events and, during cross-examination, the prosecutor asked why she had not told the arresting officer this more elaborate version. Defense counsel objected to this line of questioning and the trial court initially sustained the objection. However, the court overruled the objection following a bench conference in which the prosecutor argued that, because the defendant had made a post-*Miranda* statement, she could be impeached with anything she omitted from that statement.

■ Prosecutorial comment that creates an inference of guilt by referring to the defendant's silence during custodial interrogation effectively penalizes the defendant for exercising a constitutional privilege. *People v. Ortega,* 198 Colo. 179, 597 P.2d 1034 (1979). Thus, use of an accused's post-arrest silence for impeachment purposes, after *Miranda* warnings have been given, violates due process of law. *People v. Sandoval,* 710 P.2d 1159 (Colo.App.1985).

■ However, a different rule applies if a defendant makes a post-*Miranda* statement and then testifies at trial to a different version of events. Under those circumstances, the prosecution may cross-examine the defendant on inconsistencies between the two statements. And, the prosecution also may cross-examine the defendant on omissions in the first statement insofar as such omissions are inconsistent with the defendant's testimony at trial. *People v. Sandoval, supra.* In *People v. Quintana,* 665 P.2d 605 (Colo.1983) (fn. 7), the supreme court noted that the omission of significant details from an initial statement but included in trial testimony is in the nature of a prior inconsistent statement and, therefore, a proper subject for impeachment.

Although the court in *Quintana* did not elaborate upon what would constitute the omission of a "significant detail," other jurisdictions have held that a defendant may be cross-examined on omissions from the first statement when the "statement fails to mention a material circumstance presently testified to, which it would have been natural to mention in the prior statement." *Lyons v. United States,* 622 A.2d 34, 39 (D.C.App. 1993) (quoting E. Cleary, *McCormick on Evidence* § 835 at 68 (2d ed. 1972). Impeachment regarding these omissions would be

proper because it is "not designed to draw meaning from silence but to elicit an explanation of the prior inconsistent statements." *People v. Sandoval, supra,* 710 P.2d at 1161.

■ We agree with the court's reasoning in *United States v. Leonardi,* 623 F.2d 746,. 756–757 (2d Cir.), *cert. denied,* 447 U.S. 928, 100 S.Ct. 3027, 65 L.Ed.2d 1123 (1980), where it noted that:

> [In order for] prior silence concerning critical facts [to] be deemed inconsistent with later testimony which includes their purported recollection ... the failure to mention those matters must conflict with that which is later recalled. Where the belatedly recollected facts merely augment that which was originally described, the prior silence is often simply too ambiguous to have any probative force ... and accordingly is not sufficiently inconsistent to be admitted for purposes of impeachment.

Here, the defendant made two brief statements to the arresting officer: she stated that she was picking up the furniture for a friend and that she did not write any checks. At trial, the defendant testified that, at a party the week before, a woman named "Peaches," whom the defendant did not know, offered defendant's husband $100 to pick up some furniture for her. The defendant further testified that Peaches later gave her the $100 and a receipt, and that she borrowed her uncle's truck to pick up the furniture for Peaches.

Using the word "friend" in her first statement rather than arguably more accurate terms, such as "stranger," "employer," or "acquaintance," does not rise to the level of a significant detail whose omission would be impeachable under *Quintana.* Further, defendant's more elaborate trial testimony merely augmented her initial statement; therefore, the details omitted from her prior statement were not sufficiently inconsistent to be admitted for impeachment purposes. *See United States v. Leonardi, supra.*

■ Moreover, it is well-settled that the prosecutor could not legitimately impeach the defendant on her failure to make further statements *after* she invoked her right to remain silent. *People v. Sandoval, supra.*

The defendant's initial volunteered statements did not operate to waive her right of silence nor to authorize the prosecutor's cross-examination regarding any details that she "omitted" after invoking that right. *People v. Ortega, supra. See also United States v. McKinnell,* 888 F.2d 669 (10th Cir.1989) (evidence of defendant's statement to police in which he refused to name associates and suppliers impermissibly referred to silence which followed defendant's invocation of *Miranda* rights).

■ The admission of the defendant's post-*Miranda* silence cannot be considered harmless error. The prosecutor made direct use of the defendant's silence as a means of implying guilt in both cross-examination and rebuttal argument. She did more than merely allude to or unintentionally evoke testimony relating to the fact of defendant's custodial silence. *See People v. Herr,* 868 P.2d 1121 (Colo.App.1993). A fair reading of the record prevents us from saying with any degree of assurance that the evidence of defendant's post-arrest silence did not substantially influence the verdict or affect the fairness of the proceedings. *See People v. Quintana, supra.* Accordingly, the defendant was deprived of a fair trial, and a new trial must be granted.

## II.

Because the issue will arise on retrial, we address the defendant's contention that the trial court erred in refusing to suppress the out-of-court identification resulting from a one-on-one showup.

The defendant moved to suppress identification evidence alleging the pretrial one-on-one showup was unduly suggestive. Following a hearing, the trial court denied the motion finding there had been no police action involved in arranging the identification procedure. Because the trial court based its ruling solely upon the absence of police conduct, we conclude the court erred in denying the motion to suppress.

■ One-on-one showups are not favored because they tend to be unnecessarily suggestive, but they are not *per se* violations of due process. *People v. Mascarenas,* 666

P.2d 101 (Colo.1983). A showup violates due process when the procedure used was so unnecessarily suggestive, under the totality of the circumstances, as to render the identification unreliable. *People v. Mascarenas, supra.* And, identification evidence from an unduly suggestive showup must be suppressed. *People v. Weller,* 679 P.2d 1077 (Colo.1984).

 The following factors are relevant in determining whether a show-up identification was unduly suggestive to warrant suppression of the evidence: (1) The witness' opportunity to observe the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. *People v. Mascarenas, supra.* Inasmuch as all of the above factors are significant, the trial court here erred in ruling that the absence of direct police action was determinative of defendant's motion to suppress.

The trial court's ruling implies an assumption that, because there was no police involvement, no due process inquiry was required. We do not necessarily agree with this legal conclusion. Although Colorado courts have not been called upon to decide the question, there is a split of authority in this area. Some jurisdictions review every pretrial identification for potential due process violations even in the absence of police action, *Thigpen v. Cory,* 804 F.2d 893 (6th Cir.1986); *Green v. Loggins,* 614 F.2d 219 (9th Cir.1980), while others require some form of state action as a necessary predicate to a due process scrutiny. *State v. Williams,* 166 Ariz. 132, 800 P.2d 1240 (1987); *Kimble v. State,* 539 P.2d 73 (Alaska 1975).

However, because we find sufficient police involvement in this case, we do not address whether police action is necessary to trigger a due process inquiry. The record indicates that the police responded to the store for the specific purpose of arresting the person who had passed the forged check. The police arrested the defendant, handcuffed her, waited for the clerk to arrive, and held the defendant where the clerk could identify her.

Thus, without the police action in arresting and holding her, the defendant would not have been available for identification by the clerk.

Even if we were to follow those courts that require state action as a prerequisite to a pretrial identification challenge, that threshold was met in this case. This is not a case in which the confrontation was purely accidental or conducted completely by private persons. The actions of the police and the private citizen were inextricably intertwined; thus, the identification procedures implicated defendant's right to due process even under a standard requiring police involvement.

We conclude that the trial court erred in relying solely upon the absence of police conduct in denying the motion to suppress the identification. The trial court expressly stated that, had it found police action, it would have granted the motion because the totality of the circumstances indicated the show-up was unduly suggestive. In reaching that conclusion, the court noted that the clerk had only scant opportunity to observe the person who passed the check, the clerk was uncertain about her identification of the defendant as that person, and the identification occurred an hour and a half after the check was passed.

In light of our conclusion regarding police involvement and because of the trial court's express statement that it would have granted the motion had it found police action, we hold the motion to suppress should have been granted.

### III.

Defendant also maintains that the evidence was insufficient to support her conviction. We disagree.

 Even without the improperly admitted impeachment and identification evidence, there was sufficient evidence to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. *See Kogan v. People,* 756 P.2d 945 (Colo.1988).

Here, the only contested issue was identification. The clerk who actually took the

forged check was able to describe the woman from her observations. When the clerk discovered the check was stolen, she described the woman to her office manager, who then personally observed the woman at the counter. When the police came back later, the manager identified the defendant as that same woman. At trial, the officer identified the defendant as the woman pointed out to him at the store. This evidence, viewed as a whole and taken in the light most favorable to the prosecution, is sufficient to support a conclusion that the defendant was the person who passed the forged check. *See Kogan, supra.*

The judgment is reversed, and the cause is remanded for a new trial consistent with the views expressed herein. ,

DAVIDSON and COYTE,* JJ., concur.