**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JOSE ANGEL RAMIREZ-ESTRADA,
*Defendant-Appellant*.

No. 12-50340

D.C. No.
3:11-cr-00371-
JAH-1

OPINION

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted
February 3, 2014—Pasadena, California

Filed April 25, 2014

Before: Mary M. Schroeder and Richard R. Clifton,
Circuit Judges, and John R. Tunheim, District Judge.[*]

Opinion by Judge Clifton

---

[*] The Honorable John R. Tunheim, District Judge for the United States District Court for the District of Minnesota, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

Reversing a conviction of attempted entry after deportation and making a false claim to United States citizenship, the panel held that use of the defendant's post-*Miranda*-invocation silence to impeach him violated his constitutional rights under *Doyle v. Ohio.*

The panel clarified that a *Doyle* violation occurs where the prosecution uses a defendant's post-invocation silence to impeach the defendant regardless of whether, as here, the police complied with *Miranda*.

The panel disagreed with the government and the district court that it was the defendant's statements in response to routine booking questions, rather than his silence, that were used to impeach him. The panel explained that the defendant's statements, by themselves, are not directly inconsistent with his testimony, and it is only what he omitted from his statements that was relevant to impeach him.

The panel concluded that the error was not harmless, and remanded.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Caitlin E. Howard, Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellant.

Anne Kristina Perry (argued), Assistant United States Attorney, Laura E. Duffy, United States Attorney, and Bruce R. Castetter, Assistant United States Attorney, Chief, Appellate Section, Criminal Division, San Diego, California, for Plaintiff-Appellee.

---

**OPINION**

CLIFTON, Circuit Judge:

This case concerns the scope of a criminal defendant's constitutional rights under *Doyle v. Ohio*, 426 U.S. 610 (1976), which prevents impeachment of a defendant with his post-*Miranda* silence. Defendant-Appellant Jose Angel Ramirez-Estrada was convicted after a jury trial of attempted illegal reentry and making a false claim to U.S. citizenship. Ramirez-Estrada testified in his own defense, but the government in rebuttal introduced his prior statements in response to booking questions posed by a Customs and Border Protection ("CBP") officer after Ramirez-Estrada had been arrested and had invoked his *Miranda* rights. Nothing Ramirez-Estrada said in those statements served to impeach his testimony. Rather, it is what he *failed* to say that was relevant to undermine his credibility. We thus conclude that the use of Ramirez-Estrada's post-invocation silence to impeach him violated his rights under *Doyle*. Because this error was not harmless beyond a reasonable doubt, we reverse.

## I.  Background

Ramirez-Estrada was indicted for attempted illegal reentry in violation of 8 U.S.C. § 1326 and for making a false claim to U.S. citizenship in violation of 18 U.S.C. § 911. He was found guilty by a jury on both charges. The district court sentenced him to twenty-four months' imprisonment on each count, with the sentences to run concurrently. Ramirez-Estrada timely appealed from that final judgment.

The facts were mostly undisputed at trial. Ramirez-Estrada is an alien who had been deported from the United States on previous occasions. At some point during his prior incarceration in the United States in 2005, Ramirez-Estrada sustained a serious jaw injury, regarding which the defense presented extensive testimony. Sometime thereafter, Ramirez-Estrada was involved in court proceedings in front of United States District Judge Dana Sabraw. Judge Sabraw recommended to the Bureau of Prisons that Ramirez-Estrada's jaw injury be treated while he was in custody. The injury was never treated, and Ramirez-Estrada was later deported to Mexico.

In the early morning hours of January 4, 2011, without having obtained permission to reenter the United States, Ramirez-Estrada approached the San Ysidro Port of Entry. The only dispute at trial concerned what occurred when Ramirez-Estrada approached the primary inspection area of the Port of Entry.

CBP Officer Matthew Ponce de Leon manned the primary inspection booth that Ramirez-Estrada approached. Although Officer Ponce de Leon had a difficult time recalling Ramirez-Estrada's name and other details of their encounter, he

testified that when he asked Ramirez-Estrada about his citizenship, Ramirez-Estrada responded that he was a U.S. citizen born in Las Vegas but claimed to have no paperwork because it had been stolen. Because Ramirez-Estrada gave Officer Ponce de Leon his true identity, however, the officer was able to look him up and discovered the prior deportations. He then referred Ramirez-Estrada to secondary inspection. Officer Ponce de Leon also testified that at no point did Ramirez-Estrada complain of any physical ailments. On cross-examination, the defense called into question Officer Ponce de Leon's memory and Spanish language skills.

Ramirez-Estrada testified differently. He did not approach the Port of Entry in an attempt to reenter the United States, he testified, but only to seek help for his jaw injury, which had become increasingly painful with time and for which he had been unable to obtain any treatment in Mexico. He believed that based on Judge Sabraw's recommendation he would get treatment from federal officials. He explained all this to Officer Ponce de Leon and other officers at neighboring booths. He was then told to leave, but he did not because he was desperate to get treatment for his jaw injury, and so he was arrested and sent to the secondary inspection area. He also testified that he provided the officers with a Mexican identification card containing his true name, photo, and fingerprint. He denied that he ever claimed to be a U.S. citizen or to have been born in Las Vegas, but he acknowledged having told the officers that he had lived near that city, among other places. His credibility was challenged on cross-examination, in particular by suggestions that Ramirez-Estrada might not know what procedures would take place at the border or that the officers would ask for documents.

No other witness testified directly as to the events at primary inspection. The government sought to impeach Ramirez-Estrada's testimony by offering testimony in rebuttal by CBP Officer Gabriela Nicasio, who was responsible for booking Ramirez-Estrada several hours following the encounter between Ramirez-Estrada and Officer Ponce de Leon. The district court permitted that rebuttal testimony, over defense counsel's objections, including a *Doyle* objection. It is the allowance of that testimony that is central to this appeal.

As part of the booking process, Officer Nicasio read Ramirez-Estrada his *Miranda* rights, which he invoked by electing to wait for an attorney before answering any questions. Officer Nicasio thereafter did not ask any questions about the circumstances of Ramirez-Estrada's crime, but instead asked him routine booking questions. She testified about that at trial, as the government's sole rebuttal witness. Aside from background information and an identification of Ramirez-Estrada as the suspect apprehended on January 4, 2011, her direct rebuttal testimony consisted entirely of the following:

> Q. Agent Nicasio, when you met with the defendant, did you ask him some questions?
>
> A. Yes, I did.
>
> Q. Did you ask him questions regarding his health?
>
> A. Yes, I did.

Q. What question did you ask him regarding his health?

A. I asked him if he had any health problems.

Q. What was his response?

A. He stated no.

Q. Did you ask him any other questions where he responded with information about his health?

A. I asked him if during the biographical information, if he had any scars or tattoos, to which he remarked or stated that he had two scars above his eyebrows, somewhere in there, and he pointed to his forehead, and he had had a broken nose.

On cross-examination, the precise wording of the first question was elicited:

Q. Now, when you asked him about health condition, you actually asked him if he had any health problems, like a heart condition, diabetes, or anything like that, right?

A. Yes, sir.

Q. Okay. So those were your actual, specific words, like a heart condition, diabetes, anything like that?

A. Yes, sir. I used those as examples.

The government explicitly referred to Officer Nicasio's testimony in its closing argument.[1] The guilty verdict followed, and later this appeal. We have jurisdiction under 28 U.S.C. § 1291.

## II. Discussion

On appeal, Ramirez-Estrada alleges that various evidentiary and constitutional violations occurred at his trial. We only address Ramirez-Estrada's claim of constitutional

---

[1] The prosecutor argued:

> There is another piece of evidence that you need to consider. You'll recall the very last witness who testified in this case, that was Officer Nicasio, Gabriela Nicasio. When did Officer Nicasio meet with the defendant? Well, you'll recall the testimony in this case, ladies and gentlemen. The defendant claimed that he told everybody that he needed help, that he hurt, that the judge had told him he needed to have this surgery, and he wanted help. And that has been the theme throughout this case; he needed help.
>
> Ladies and gentlemen, when he was specifically asked by Officer Nicasio, do you have any physical problems, diabetes, heart, anything, he said no. She said, do you have any tattoos, any identifying marks? He said, I have a broken nose.
>
> Ladies and gentlemen, he is talking to an officer who is making inquiries about his health, and he says no. That is a circumstance, ladies and gentlemen, that is direct evidence that he committed the crimes with which he's been charged . . . .

error under *Doyle v. Ohio*, 426 U.S. 610 (1976). We review alleged violations of a defendant's constitutional rights under *Doyle* de novo. *See United States v. Caruto*, 532 F.3d 822, 827 (9th Cir. 2008). An error under *Doyle* requires reversal unless the government can show that the error was harmless beyond a reasonable doubt. *Id.*

*A.* Doyle *Error*

A criminal defendant's rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), including his right to remain silent, are by now ingrained in our national consciousness. To protect the right to remain silent, the Supreme Court held in *Doyle* that a defendant's silence after receiving *Miranda* warnings cannot be used to impeach him should he choose to testify at trial. *Doyle*, 426 U.S. at 619. *Doyle*'s reach has been limited, however. For instance, the Supreme Court held in *Anderson v. Charles*, 447 U.S. 404, 408 (1980), that a defendant's trial testimony can be impeached by introducing prior inconsistent statements made at the time of arrest but after *Miranda* rights had been waived. In *Charles*, the defendant had told the police that he stole a car from one location but at trial changed his story to say that the car had been stolen from a different location. *See id.* at 404–06. Introducing such inconsistent statements did not violate *Doyle* because no meaning was being drawn from the defendant's silence. *Id.* at 409.

In *Caruto*, we interpreted the analytical framework established by these cases as follows:

> As stated in *Charles*, the primary inquiry in cases where a defendant waives his or her *Miranda* rights is whether the prosecutor's

question or argument is "designed to draw meaning from silence" or instead merely "to elicit an explanation for a prior inconsistent statement." 447 U.S. at 409. The Supreme Court noted that "[e]ach of two inconsistent descriptions of events may be said to involve 'silence' insofar as it omits facts included in the other version." *Id.* However, the Court held that "*Doyle* does not require any such formalistic understanding of 'silence,' and we find no reason to adopt such a view in this case." *Id.* Where, as here, it is a defendant's invocation of her *Miranda* rights that results in the omitted facts that create the difference between the two descriptions, cross-examination based on those omissions draws meaning from the defendant's protected silence in a manner not permitted by *Doyle*.

532 F.3d at 830–31 (citation omitted).

*Caruto* highlighted two crucial factors that trigger *Doyle*: (1) a defendant's *invocation* of his right to remain silent and (2) an *omission* in post-*Miranda* statements arguably inconsistent with his trial testimony. *See id.* at 831 ("Where a defendant has invoked her *Miranda* rights, it is even more important that the distinction between inconsistency and omission be carefully observed."). By contrast, a *direct* inconsistency between the post-*Miranda* statements, in and of themselves, and the trial testimony may be used to impeach a defendant. *See Charles*, 447 U.S. at 408–09.

We analyze the facts of this case under this framework. Although neither the Supreme Court nor this court has

previously faced the particular situation presented here, we conclude that *Doyle* bars admission of Ramirez-Estrada's statements to Officer Nicasio. It is clear and undisputed that Ramirez-Estrada invoked his *Miranda* rights by asking for a lawyer. The difficult question is the second one: whether his statements in response to Officer Nicasio's routine booking questions were directly inconsistent with his trial testimony. We conclude that they were not and that it was, instead, his silence that was used against him.

We initially clarify that, for purposes of *Doyle*, it is irrelevant that there was no *Miranda* violation. The government argues that no *Doyle* violation could have occurred because there was no *Miranda* violation. This argument misreads our precedent. In *Caruto*, this court held that there was a *Doyle* violation even though there was no *Miranda* violation. The defendant there initially waived her *Miranda* rights and answered the police's questions; only five to seven minutes later did she invoke her *Miranda* rights and cut off the interview. *Caruto*, 532 F.3d at 824. Here, there was also no *Miranda* violation. Although Ramirez-Estrada invoked his *Miranda* rights at the outset of the interview, Officer Nicasio permissibly asked him routine booking questions not covered by *Miranda*. *See Pennsylvania v. Muniz*, 496 U.S. 582, 601–02 (1990). Nevertheless, a *Doyle* violation occurs where the prosecution uses defendant's post-invocation silence to impeach him, regardless of whether the police complied with *Miranda*.

This brings us to the central question in this case: whether the prosecution in fact used defendant's silence to impeach him. The government argues that Ramirez-Estrada's silence was not used to impeach him. The government asserts that it was his statements in response to the routine booking

questions that were used to impeach him, because of those statements' inconsistency with his trial testimony.**[2]** The district court agreed. It reasoned that this case was distinguishable from *Doyle* because the prosecution here sought to impeach Ramirez-Estrada only with his answers to Officer Nicasio's questions and not with his silence—unlike *Doyle*, where the prosecution sought to impeach the defendant with his failure to tell his story to the police.

We disagree. Ramirez-Estrada's statements, by themselves, are not directly inconsistent with his testimony. It is only what he omitted from his statements—in other words, his silence—that was relevant to impeach him.

There is no doubt that in some circumstances a defendant's silence may be used to impeach him. In particular, a defendant may reasonably "be impeached by [his] previous failure to state a fact in circumstances in which that fact naturally would have been asserted." *Jenkins v. Anderson*, 447 U.S. 231, 239 (1980). Here, the asserted inconsistency is precisely that: Ramirez-Estrada failed to mention his jaw injury to Officer Nicasio. Had Ramirez-Estrada never invoked his *Miranda* rights, this kind of impeachment would have been permissible. His invocation of his *Miranda* rights, however, brings this case within the purview of *Doyle*.

---

**[2]** The government also argues that even if the statements were taken in violation of *Miranda*, they can be used to impeach the defendant's inconsistent trial testimony. Although correct, this argument again misreads our court's precedents: as we have already discussed, in the context of *Doyle*, we are not concerned with whether *Miranda* was complied with. All that matters is that the defendant *invoked* his *Miranda* rights. *See Caruto*, 532 F.3d at 824.

The facts of this case compel our conclusion that *Doyle* was violated. As part of the booking process after Ramirez-Estrada's arrest, Officer Nicasio asked Ramirez-Estrada two questions that are relevant here. First, she asked him: "do you have any health problems, like a heart condition or diabetes or anything like that?" Ramirez-Estrada answered "no." Second, she asked him "do you have any tattoos, any scars?" After Ramirez-Estrada described his tattoos, she asked again "what about any major scars, no scars?" To this, he responded that he had a broken nose from when he was a boxer.[3] Based on this exchange, Officer Nicasio gave the testimony in rebuttal quoted above. The significance of his responses was not what he said, but what he did *not* say: he never mentioned his jaw injury.

In the context of Officer Nicasio's first question, "health problems" referred to potentially life-threatening conditions, "like a heart condition or diabetes." As part of the booking process, it makes sense that such a question would be asked, given that the location of his detention pending trial may depend on whether he has any significant health conditions. It is therefore not directly inconsistent for Ramirez-Estrada to have answered "no" despite his claim that he approached the Port of Entry to seek help for his jaw injury. By that point, Ramirez-Estrada had been arrested and had invoked his right to remain silent. His answer is thus relevant only insofar as it demonstrates his failure to talk about the circumstances of his offense. In other words, the impeachment operated as a comment on Ramirez-Estrada's silence, which is impermissible under *Doyle*.

---

[3] A recording of the interview, from which we can draw precise quotations, is part of the record.

Similarly, Officer Nicasio's second question, which asked about tattoos and scars, presumably for purposes of future identification, did not directly call for Ramirez-Estrada to mention his jaw injury. His answer, which mentions a broken nose but not his jaw injury, is again relevant only insofar as it demonstrates what Ramirez-Estrada *failed* to state. It is another impermissible comment on his silence.

That Officer Nicasio's testimony operated as a comment on Ramirez-Estrada's silence is made clear when we compare the facts of this case to the facts presented in cases cited by the government. For example, in *United States v. Gomez*, 725 F.3d 1121, 1124–25 (9th Cir. 2013), the defendant refused to answer border officers' questions regarding methamphetamine found hidden in the gas tank of his car. Despite refusing to answer their questions after being given *Miranda* warnings, the following exchange occurred:

> [Officer] Fuentes: You don't, don't want to talk?
>
> Gomez: No, it's that no, I can't talk. It . . . it's my family, you see.
>
> Fuentes: Say again?
>
> Gomez: It's my family.
>
> Fuentes: Your family?
>
> Gomez: Yes. It's, I'm just going to say something. Okay?
>
> Fuentes: [unintelligible]

> Gomez: Listen, listen, listen, listen, listen [unintelligible] . . . I can't say anything because my family . . . my family will get killed. Okay?

*Id.* During the government's rebuttal, Officer Fuentes was permitted to testify regarding Gomez's statement that his family would get killed to impeach Gomez's trial testimony that he had no knowledge of the methamphetamine. *Id.* at 1125. The court held that, "in order to be admissible, the [prior] statement must be '*arguably*' inconsistent with the defendant's testimony at trial." *Id.* at 1126. Therefore, the defendant's statement that his family would get killed if he talked was admissible to impeach his claimed lack of knowledge, because of the arguable inconsistency between what he previously *said* and what he testified to at trial. *Id.* at 1126–27. In other words, his statement, in and of itself, was arguably inconsistent with his trial testimony.

By contrast, the government here sought to impeach Ramirez-Estrada not based on what he *said* but on what he *failed to say*—that is, by his silence. His statements, by themselves, are not arguably inconsistent with his testimony; it is only his failure to mention his jaw injury, in response to questions that did not directly call for that information, that arguably impeaches him. Officer Nicasio's testimony is thus relevant only insofar as it highlights Ramirez-Estrada's silence regarding his jaw injury.

We offer an additional reason for our conclusion. Ramirez-Estrada had no way to effectively cross-examine Officer Nicasio without bringing out the fact that he had invoked his *Miranda* right to remain silent. *See Caruto*, 532 F.3d at 830 ("Caruto could not fully explain why her

post-arrest statement was not as detailed as her testimony at trial without disclosing that she had invoked her *Miranda* rights."). As we have already discussed, Officer Nicasio's booking questions were narrow questions that did not call for Ramirez-Estrada to mention his jaw injury. Although defense counsel tried to elicit from Officer Nicasio the narrow nature of her question regarding Ramirez-Estrada's health, it was impossible for defense counsel to probe the limited nature of her inquiry without eliciting from her the fact that Ramirez-Estrada had invoked his *Miranda* rights. Notably, defense counsel could not ask Officer Nicasio whether she inquired as to Ramirez-Estrada's reasons for approaching the Port of Entry. Because Officer Nicasio's direct testimony necessarily implicated Ramirez-Estrada's silence, the only way his counsel could effectively cross-examine her was by eliciting the reason for that silence—his invocation of *Miranda*. Unsurprisingly, defense counsel did not go down that route, as that would have been more likely to damage Ramirez-Estrada's case than to help it. Therefore, by operating as a comment on Ramirez-Estrada's silence, Officer Nicasio's testimony was in practice irrebuttable save by further highlighting the fact of Ramirez-Estrada's silence. But *Doyle* safeguards *Miranda* rights by keeping from the jury the fact that a defendant invoked his right to remain silent. It would thus run counter to *Doyle* to allow the government to introduce testimony inevitably implicating defendant's silence after invocation of *Miranda*, leaving the defendant with no practical way to rebut that testimony other than by highlighting his invocation of *Miranda*—precisely what *Doyle* mandates that the jury should not be exposed to. *See Doyle*, 426 U.S. at 619.

*B.  Harmfulness of Error*

Given the constitutional *Doyle* error that occurred, reversal is required unless the error is harmless beyond a reasonable doubt. *See United States v. Velarde-Gomez*, 269 F.3d 1023, 1034 (9th Cir. 2001) (en banc). We consider three factors in deciding the question of harmlessness: "[1] the extent of comments made by the witness, [2] whether an inference of guilt from silence was stressed to the jury, and [3] the extent of other evidence suggesting defendant's guilt." *Id.* (alterations in original) (quoting *United States v. Newman*, 943 F.2d 1155, 1158 (9th Cir. 1991)).

Although the jury here was not explicitly urged to make an inference of guilt from silence, the first and third factors suggest that the error was harmful, the third factor strongly so. Regarding the first factor, Officer Nicasio's entire substantive testimony on direct examination consisted of relating Ramirez-Estrada's responses to the two booking questions at issue. This, combined with the fact that Officer Nicasio was the sole government rebuttal witness and was thus the last witness to testify before the jury's deliberations, endowed the fact of Ramirez-Estrada's failure to mention his jaw injury to Officer Nicasio with great significance. *Cf. id.* at 1035 ("[T]he qualitative extent [of the witness's testimony] . . . endowed the fact of [the defendant's] silence with great significance . . . .").

More importantly, as to the third factor, the extent of the other evidence was very limited. The only disputed issues at trial were whether Ramirez-Estrada intended to enter the United States and what he said to Officer Ponce de Leon at the primary inspection area of the Port of Entry. This issue boiled down to a credibility battle between Ramirez-Estrada

and Officer Ponce de Leon. Their stories were inconsistent, and the credibility of each was attacked. Ramirez-Estrada's failure to mention his jaw injury to Officer Nicasio was offered by the government in rebuttal for the purpose of undermining Ramirez-Estrada's credibility, and if it persuaded the jury, it was very damaging to his defense. Indeed, "because the defendant offered 'plausible, innocent explanation[s]'" for his conduct "and for the inconsistencies in his statements to . . . officials"—including a potential language barrier between himself and Officer Ponce de Leon—Ramirez-Estrada's "credibility was of utmost importance." *Id.* (alteration in original) (quoting *United States v. Foster*, 227 F.3d 1096, 1101 (9th Cir. 2000)). Ramirez-Estrada's theory, "while not necessarily compelling, is . . . plausible." *Id.* As such, we cannot conclude that the error was harmless beyond a reasonable doubt.

## III.    Conclusion

Allowing Officer Nicasio to testify in a manner that could only invite the jury to draw inferences from Ramirez-Estrada's post-invocation silence violated his constitutional rights under *Doyle*. Because this constitutional violation was not harmless beyond a reasonable doubt, we reverse Ramirez-Estrada's conviction and remand the case to the district court.

**REVERSED AND REMANDED.**