The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 8, 2022

## 2022COA101

**No. 18CA1878, *People v. Castro* — Constitutional Law — Due Process — Fourth Amendment — Searches and Seizures — Custodial Interrogation — Miranda — Post-advisement Silence — Fifth Amendment — Right to Remain Silent**

In this case, following his arrest and receipt of *Miranda* warnings, the defendant twice made very brief, exculpatory statements to the police. At trial, the defendant testified to various details consistent with those statements. The prosecutor cross-examined the defendant about, and later commented in closing argument on, why he had not given the police those details following, or since, his arrest.

A division of the court of appeals considers whether *Doyle v. Ohio*, 426 U.S. 610 (1976), and its progeny, prohibited the prosecutor from cross-examining the defendant about, and commenting in closing argument on, his failure to inform the

authorities of the details to which he testified at trial. Because the division concludes that it did, the division reverses and remands for a new trial.

Court of Appeals No. 18CA1878
Morgan County District Court No. 17CR1
Honorable Carl S. McGuire III, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Fidel Castro,

Defendant-Appellant.

## JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE DAILEY
Berger and Tow, JJ., concur

Announced September 8, 2022

Philip J. Weiser, Attorney General, John T. Lee, First Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Lynn Noesner, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    An individual who has been arrested and advised of his or her *Miranda* rights[1] will sometimes say something to the police and then testify somewhat differently at trial.  In that situation, a prosecutor will often want to ask about, and comment in closing argument on, why the accused did not tell the police what he told the jury.  In some circumstances, though, the prosecutor's questions and comments will impermissibly penalize the accused for not saying something after having been advised that he doesn't have to say anything.  And because that was the case here, we reverse the conviction of defendant, Fidel Castro, for sexual assault and remand for a new trial.

## I.    *Background*

¶ 2    Castro and C.V., the victim, knew each other through two other people who were a couple.  The couple hosted a small New Year's Eve gathering in Brush, Colorado.[2]  Before that evening, Castro and C.V. had been on at least one date together.  At midnight, they kissed.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] Castro, C.V., and C.V.'s three minor children were the only guests in attendance.

¶ 3 The host couple went to bed, leaving Castro, C.V., and C.V.'s then-sleeping children in the living room. According to C.V., the following then happened:

- Around 3 a.m., as she was heading to a couch to go to sleep, Castro approached and kissed her, and put his hands down the front of her pants.

- Castro then repeatedly kissed her, bit her genitals and thighs, and digitally penetrated her, at first with his fingers, and then with his whole hand.

- Although she told Castro to stop and that he was being "too rough," he did not stop, replying, instead, "Too rough? Or not rough enough?"

¶ 4 The encounter ended when one of C.V.'s children woke up and asked for a drink of water. Afterward, Castro asked C.V. for her phone number. When she could not find a pen and paper in the kitchen to write it down, C.V. told Castro to find her on Facebook Messenger. Castro left shortly thereafter.

¶ 5 Around 9 p.m. that evening, C.V. went to the emergency room, where she was treated for bruising and lacerations on her genitals,

bite marks on her neck and genitals, and damage to her urethra. A DNA test showed the presence of Castro's saliva on those areas.

¶ 6 Castro was arrested the next day. During the arrest, a police officer advised him of his *Miranda* rights. Castro declined to speak with the officer. Subsequently, while being transported to jail, Castro volunteered, very briefly, that the encounter with C.V. "was consensual." The following day, during a buccal swab collection, Castro spontaneously told the swabbing officer the very same thing.

¶ 7 Castro's theory of defense was that he and C.V. had previously been sexually involved during a romantic relationship, and the encounter that night had been consensual.

¶ 8 Nevertheless, the jury convicted Castro of sexual assault, and the trial court sentenced him under the Colorado Sex Offender Lifetime Supervision Act of 1998 (SOLSA), §§ 18-1.3-1001 to -1012, C.R.S. 2021, to an indeterminate term of twenty-five years to life imprisonment in the custody of the Department of Corrections.

¶ 9 Castro now appeals, contending that (1) reversal is required because the prosecutor's use of his post-advisement silence violated his due process rights and (2) SOLSA is unconstitutional.

¶ 10    Because we agree with Castro's first contention, we do not address his second one.

### II.    *Evidence and Comments on Castro's Post-Arrest Silence*

¶ 11    Castro contends that the trial court reversibly erred when it permitted the prosecutor to cross-examine him about, and comment in closing argument on, his post-arrest silence.  We agree.

### A.    *Facts*

¶ 12    Castro declined to speak with law enforcement after being arrested and advised of his *Miranda* rights, but he later volunteered to two officers that the sexual encounter with C.V. had been consensual.

¶ 13    At trial, Castro testified that (1) he and C.V. had a prior relationship; (2) C.V. initiated sexual contact earlier that evening by putting her hands down his pants while kissing him; (3) he believed she was inviting him to join her on the couch when he began kissing her; (4) she never told him to stop during the encounter; (5) he thought she was enjoying herself during the encounter; (6) he was unaware, until the next day, that he had hurt her; and (7) he thought the entire encounter was consensual.

¶ 14     On cross-examination, the prosecutor inquired of him as follows:

> PROSECUTOR: Did you tell that deputy . . .
> everything you just told us here this morning?
>
> CASTRO: No, I did not.
>
> PROSECUTOR: Why not?

¶ 15     Before Castro could answer, defense counsel objected, arguing that this line of questioning suggested that Castro was given the opportunity to give his account and chose not to, and that it "basically [sought] to punish Mr. Castro for exercising his right to silence."  The court overruled defense counsel's objection, holding, based on *People v. Davis*, 312 P.3d 193 (Colo. App. 2010), *aff'd*, 2013 CO 57, and *People v. Quintana*, 665 P.2d 605 (Colo. 1983), that because Castro had exercised only partial, and not complete, silence, he could be impeached with his silence.

¶ 16     The prosecutor continued:

> PROSECUTOR: We're now in June of 2018.
> Did you ever think to talk to law enforcement
> and let them know your side of the story since
> you were released from jail?
>
> CASTRO: I'm saying it now.
>
> PROSECUTOR: But you didn't think it would
> be important for law enforcement?

¶ 17     Defense counsel objected again, saying that the questions "tread dangerously close to putting a burden on defendant to prove his innocence." The court, again, overruled the objection.

¶ 18     During closing arguments, the prosecutor said that Castro "had a story. And he was going to stick to it. He stuck to it. He's had about 18 months to come up with it. He was given the opportunity, not once but twice, to talk to law enforcement."

¶ 19     Defense counsel objected, arguing, as pertinent here, that the prosecutor's statement impermissibly commented on Castro's right to remain silent. The trial court overruled the objection, saying it was a fair comment on testimony presented at trial.

### B.     The Prosecutor's Actions Violated Castro's Due Process Rights

¶ 20     Ordinarily, "[a] trial court's decisions to determine the scope of cross-examination and closing arguments will be upheld absent a showing of an abuse of discretion." *Davis*, 312 P.3d at 198. However, "[w]e review an alleged violation of constitutional rights de novo." *People v. Scott*, 2021 COA 71, ¶ 12; *accord United States v. Caruto*, 532 F.3d 822, 827 (9th Cir. 2008) ("We review de novo whether references to a defendant's silence following the

administration of *Miranda* warnings violate [his] right to due process . . . .").

¶ 21     Before any custodial questioning by the police, a "person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona,* 384 U.S. 436, 444 (1966).

¶ 22     In *Doyle v. Ohio,* 426 U.S. 610 (1976), the United States Supreme Court noted:

> [W]hen a person under arrest is informed, as *Miranda* requires, that he may remain silent, . . . it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony.

426 U.S. at 619 (quoting *United States v. Hale,* 422 U.S. 171, 182-83 (1975) (White, J., concurring in the judgment)); *see Davis,* 312 P.3d at 198 ("In *Doyle* . . . the Supreme Court held that an accused's post-arrest silence after having been given a *Miranda* advisement could not be used for impeachment purposes, because

the *Miranda* warnings implicitly assure the defendant that his silence will carry no penalty."); *see generally* 3 Wayne R. LaFave et al., *Criminal Procedure* § 9.6(a), Westlaw (4th ed. database updated Nov. 2021) ("Not only is 'every post-arrest silence . . . insolubly ambiguous' because it 'may be nothing more than the arrestee's exercise of [his] *Miranda* rights,' but use of the silence to impeach 'would be fundamentally unfair' given the fact that the warnings carry the implicit 'assurance that silence will carry no penalty.'" (quoting *Doyle*, 426 U.S. at 617-18)).

¶ 23     In *Anderson v. Charles*, 447 U.S. 404, 408-09 (1980), the United States Supreme Court held that a defendant's trial testimony could be impeached by introducing prior inconsistent statements made at the time of arrest, after *Miranda* rights had been waived.

¶ 24     In that case, the defendant had argued that the discrepancy between his trial testimony and his earlier statement resulted from omissions in his initial statement, which, the defendant argued, were tantamount to silence. *Id.* at 406-07. But

> [t]he Supreme Court rejected this argument, explaining that "a defendant who voluntarily speaks after receiving *Miranda* warnings has

> not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all." The Court thus held that when a defendant makes inconsistent statements, his omission of facts from one statement (which facts he includes in a later statement) does not constitute silence under *Doyle.*

*Hendrix v. Palmer*, 893 F.3d 906, 924 (6th Cir. 2018) (citations omitted).

¶ 25 The People argue that, having volunteered a statement to the police, Castro chose not to remain silent, and, consequently, what he said — and, correspondingly, what he didn't say — became fair game for evidence and comment.

¶ 26 We do have case law supporting that general proposition. *See Quintana*, 665 P.2d at 610 n.7 ("The failure to make any statement should be distinguished from the situation where an accused does make a statement to law enforcement officials but the statement omits significant details which are later included in a subsequent statement. In the latter situation the accused has not elected to remain silent, but instead has waived that right and made a statement."); *Davis*, 312 P.3d at 199 ("A testifying defendant may also be cross-examined on his partial silence where he makes a

9

statement to law enforcement officials but the statement omits significant details which are later included in a subsequent statement." (citing *Quintana*, 665 P.2d at 610 n.7)); *People v. Rogers*, 68 P.3d 486, 492 (Colo. App. 2002) ("A defendant cannot have it both ways. If he talks, what he says or omits is to be judged on its merits or demerits." (quoting *United States v. Goldman*, 563 F.2d 501, 503 (1st Cir. 1977))).

¶ 27     But, as always, the devil's in the details.

¶ 28     "*Doyle* [does not go] out the window as soon as a defendant makes *any* post-*Miranda* statement." *Hendrix*, 893 F.3d at 924. "'[T]he mere fact that [the defendant] may have answered some questions or volunteered some statements on his own does not deprive him of his right to refrain from answering any further inquiries . . . .' or from volunteering further information, albeit exculpatory information." *People v. Ortega*, 198 Colo. 179, 184, 597 P.2d 1034, 1037 (1979) (quoting *Miranda*, 384 U.S. at 445).

¶ 29     "[T]he primary inquiry in cases where a defendant waives his or her *Miranda* rights is whether the prosecutor's question or argument is 'designed to draw meaning from silence' or instead merely 'to elicit an explanation for a prior inconsistent statement.'"

10

*Hendrix*, 893 F.3d at 925 (quoting *Caruto*, 532 F.3d at 830); *see Anderson*, 447 U.S. at 408 ("*Doyle* does not apply to cross-examination" into or commentary about "prior inconsistent statements."); *see also Caruto*, 532 F.3d at 831 ("Even in [*Miranda*] non-invocation cases in this and other circuits, the differences between the post-arrest statement and the trial testimony must be 'arguably inconsistent'; mere omissions are not enough to justify cross-examination or argument regarding what was not said at the time of arrest.") (citation omitted); *United States v. Casamento*, 887 F.2d 1141, 1179 (2d Cir. 1989) ("[E]ven if a defendant has made statements to the police after receiving *Miranda* warnings, he is deemed to have maintained his silence, unless the post-arrest statements are inconsistent with the defendant's testimony at trial.").

¶ 30    In the present case, Castro volunteered very limited statements that, in all respects other than the amount of detail provided, were consistent with the testimony he gave at trial.

¶ 31    In *People v. Hardiway*, 874 P.2d 425, 427 (Colo. App. 1993), the defendant, like here, spoke only briefly with an officer after having been arrested and advised of her rights. At trial, "she

testified to a more detailed version of events and, during cross-examination," was asked by the prosecution "why she had not told the arresting officer this more elaborate version." The trial court ultimately ruled that "because [she] had made a post-*Miranda* statement, she could be impeached with anything she omitted from that statement." *Id.*

¶ 32 A division of this court reversed the trial court. It recognized, consistent with the authorities mentioned above, that

> use of an accused's post-arrest silence for impeachment purposes, after *Miranda* warnings have been given, violates due process of law.
>
> However, a different rule applies if a defendant makes a post-*Miranda* statement and then testifies at trial to a different version of events. Under those circumstances, the prosecution may cross-examine the defendant on inconsistencies between the two statements. And, the prosecution also may cross-examine the defendant on omissions in the first statement insofar as such omissions are inconsistent with the defendant's testimony at trial.

*Id.* (citation omitted).

¶ 33 But, the division recounted, where the "belatedly recollected facts merely augment that which was originally described, the prior

12

silence is often simply too ambiguous to have any probative force . . . and accordingly is not sufficiently inconsistent to be admitted for purposes of impeachment." *Id.* at 428 (quoting *United States v. Leonardi*, 623 F.2d 746, 756-57 (2d Cir. 1980)). The division determined that the "defendant's initial volunteered statements did not operate to waive her right of silence nor to authorize the prosecutor's cross-examination regarding any details that she 'omitted' after invoking that right." *Id.*

¶ 34    In this case, Castro did not testify to anything inconsistent with what he had told the police. He told the police, and the jurors, that his sexual encounter with C.V. was "consensual." That he added, at trial, details consistent with a consensual encounter did not, under *Doyle* and its progeny, allow the prosecution to inquire into, or comment about, why those details were missing from the original statement.

¶ 35    Consequently, the trial court erred by permitting the cross-examination and comment on Castro's post-arrest silence. *See United States v. Ramirez-Estrada*, 749 F.3d 1129, 1131-38 (9th Cir. 2014) (The defendant's "statements, by themselves, are not directly inconsistent with his testimony. It is only what he omitted from his

statements — in other words, his silence — that was relevant to impeach him."); *United States v. Canterbury*, 985 F.2d 483, 486 (10th Cir. 1993) ("The questions were not designed to point out inconsistencies between Canterbury's trial testimony and his statements at the time of arrest. In fact, Canterbury's post-arrest statements are not inconsistent with his entrapment defense. . . . The focus of the examination was therefore not on inconsistent stories . . . but on Canterbury's failure to present his exculpatory story at the time of arrest.").

¶ 36 In so concluding, we reject, as misplaced, the People's reliance on *Davis*. In *Davis*, the defendant had two telephone interviews with a detective prior to his arrest, and Davis testified twice during direct examination that he had "told [the detective] everything that happened." 312 P.3d at 200. Cross-examination, the division held, appropriately pointed out that his silence on some things during the interviews was inconsistent with his statement that he'd told the officer "everything." *Id.* at 200-01. Again, nothing Castro said to the officers was inconsistent with anything he testified to at trial.

¶ 37 Nor are we persuaded by the People's reliance on *People v. Lewis*, 2017 COA 147, as rejecting the ongoing viability of *Ortega*

14

(and, consequently, *Hardiway*, which relied on *Ortega*). The *Lewis* division distinguished *Ortega* by noting that "[u]nlike the defendant in *Ortega*," Lewis "did not make a brief statement, answer only some questions, or volunteer only limited statements. Instead, he talked at length, and he never attempted to refrain from answering [police] inquiries." *Id.* at ¶ 36.[3]

### C.    The Error Was Not Harmless

¶ 38    The question at this point is whether the error requires a new trial. Because the error was preserved and of constitutional dimension, reversal is required unless we are "able to declare a belief that [the error] was harmless beyond a reasonable doubt." *Hagos v. People*, 2012 CO 63, ¶ 11 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

¶ 39    "An error is not harmless beyond a reasonable doubt '[i]f there is a reasonable possibility that the defendant could have been prejudiced.' Alternatively, an error is harmless beyond a reasonable doubt 'if there is no reasonable possibility that it affected the guilty

---

[3] *People v. Lewis*, 2017 COA 147, ¶ 32, noted that the defendant had given an approximately fifty-minute, videotaped statement to the police.

15

verdict.'" *People v. Stroud*, 2014 COA 58, ¶ 6 (quoting *People v. Orozco*, 210 P.3d 472, 476 (Colo. App. 2009)); *cf. People v. Phillips*, 2012 COA 176, ¶ 93 ("The inquiry in a harmless error analysis is 'whether the guilty verdict actually rendered in this trial was surely unattributable to the error,' and 'not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered.'" (quoting *People v. Fry*, 92 P.3d 970, 980 (Colo. 2004))).

¶ 40    When evaluating the effect of a prosecutor's improper remarks on a defendant's silence, a court may consider the following factors: (1) the prosecutor's use of the post-arrest silence; (2) which party elected to pursue the line of questioning; (3) the quantum of other evidence of guilt; (4) the intensity and frequency of the reference; and (5) the trial court's opportunity to grant a motion for mistrial or to give curative instructions. *People v. Welsh*, 58 P.3d 1065, 1072 (Colo. App. 2002), *aff'd*, 80 P.3d 296 (Colo. 2003); *cf. Caruto*, 532 F.3d at 831 ("When addressing comments on silence, we consider in turn three factors, '(1) the extent of comments made by the witness, (2) whether an inference of guilt from silence was stressed to the jury, and (3) the extent of other evidence suggesting defendant's

16

guilt.'" (quoting *United States v. Velarde-Gomez*, 269 F.3d 1023, 1034 (9th Cir. 2001))).

¶ 41 Here, the prosecutor's comments sought to use Castro's post-arrest silence to impeach his testimony and indirectly imply his guilt. The prosecutor implied in his cross-examination that an innocent person would have talked with the police sooner and in more detail. And during closing argument, the prosecutor said that Castro "had a story" and he was "going to stick to it," implying that Castro lied during his testimony.

¶ 42 Next, it was the prosecution that injected the issue into the case on cross-examination of Castro and in closing argument, and the trial court did not issue any instructions, curative or otherwise, about how the jury should consider Castro's post-arrest silence.

¶ 43 Of great significance, the evidence against Castro was not overwhelming. There was, to be sure, evidence of sexual conduct, some of it very "rough." But the determinative issue was whether the sex was consensual or not, and there were no other witnesses to the critical events that night. The case hinged, then, on the jury's assessment of Castro's and C.V.'s credibility. The prosecution's

questions and comments were directed at undermining Castro's credibility and posturing him as an untrustworthy witness.

¶ 44     Given that the case turned on Castro's credibility, we conclude that there is a reasonable possibility that the prosecutor's improper questions and comments contributed to the jury's verdict finding Castro guilty. Thus, we conclude that the error was not harmless and that, consequently, a new trial is required.

### III.     Disposition

¶ 45     The judgment of conviction is reversed, and the case is remanded for a new trial.

JUDGE BERGER and JUDGE TOW concur.